Present: Hassell, C.J., Lacy, Keenan, Koontz, Kinser, and Lemons, JJ., and Compton,* S.J.

JAMES ROBERT WELCH, JR.

v. Record No. 051563     OPINION BY JUSTICE DONALD W. LEMONS
                                    April 21, 2006
COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

In this appeal, we consider whether the Commonwealth's evidence of a "sexual relationship" between James R. Welch, Jr. and a 14-year-old girl is sufficient to support his conviction under Code § 18.2-63 for carnal knowledge of a child. For the reasons stated below, we will reverse the judgment of the Court of Appeals of Virginia.

I. Facts and Proceedings Below

At trial, the Commonwealth's evidence established that James Welch, a 27-year-old man, had engaged in unspecified "sexual relations" with Amanda, a 14-year-old babysitter for his daughter. At the close of the Commonwealth's case-in-chief, the defendant moved to strike the evidence because the Commonwealth failed to carry its burden to make a "specific showing of certain kinds of acts" constituting carnal knowledge. The trial court overruled the motion, stating: "[I]n all candor, it, probably, would have been better if it

_____

* Senior Justice Compton participated in the hearing and decision of this case before his death on April 9, 2006.

had been more particular, more graphic, if you will; this description of what they did.  But, nonetheless . . . I'm gonna [attribute] to the term 'sexual relations' what that term means.  And – and, unfortunately, there's no reason for me to think that this child doesn't know what that term means."  Subsequently, after Welch presented his evidence, the trial court overruled a renewed motion to strike.  Welch was convicted and was sentenced to five years incarceration.

Welch appealed to the Court of Appeals of Virginia, where his conviction was affirmed in an unpublished opinion.  Welch v. Commonwealth, Record No. 1427-04-3, slip op. at 5 (June 28, 2005).  Welch appeals to this Court upon one assignment of error:  "the Virginia Court of Appeals erred in finding that the acts possibly included in the term 'sexual relations' are synonymous with the legal definition of 'sexual intercourse.' "

## II.  Analysis

### A.  Standard of Review

Welch challenges the sufficiency of the evidence to support his conviction.  It is well established that, on appeal, this Court must view the evidence and all reasonable inferences flowing therefrom in the light most favorable to the prevailing party at trial, here the Commonwealth.  Commonwealth v. Norman, 268 Va. 539, 545-46, 604 S.E.2d 82, 85 (2004); Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786

2

(2003).  We will affirm the trial court's judgment unless it is plainly wrong or without evidence to support it.  Code § 8.01-680; Barrett v. Commonwealth, 268 Va. 170, 179, 597 S.E.2d 104, 108 (2004).

### B.  Evidence Presented at Trial

The Commonwealth's case-in-chief at trial consisted of testimony provided by Amanda and Investigator Jones.  Amanda testified that she had been "dating" Welch.  When the Commonwealth asked her if she had a "sexual relationship" with Welch, a term used by the Commonwealth throughout its direct examination of Amanda, she responded affirmatively:

> Q:  Did you have any sexual relationship with Mr. Welch?
>
> A:  Yes, sir.
>
> Q:  At that location?
>
> A:  Yes, sir.
>
> Q:  Now, how many times would you have had a sexual relationship with him, at that location in Augusta?
>
> A:  Over twenty.

At no point during Amanda's testimony did the Commonwealth ask her to define what she understood to be a "sexual relationship."

Investigator Candace L. Jones' notably brief testimony simply established that she had obtained letters between Welch

3

and Amanda from the Commonwealth's Attorney's office, and that, when she confronted Welch during her investigation, Welch denied being sexually intimate with Amanda. Significantly, there was no testimony about the content of the letters and they were not admitted into evidence. The Commonwealth rested its case after Jones' testimony.

During the defendant's case-in-chief, the Commonwealth elicited testimony from Amanda's mother on cross-examination that Welch admitted to her that he was "having relations" with Amanda. When pressed about what this meant, the following exchange occurred:

> Q: And did he – what did he tell you, exactly, when he said "he's having relations"? Did he tell you as to whether they were having sex together?
>
> A: No. He said just what I had suspected was true.
>
> Q: And what did you suspect?
>
> A: That they were having sexual relations.
>
>                 * * *
>
> Q: Okay. All right. And he did not give you any details as to how he would have sexual relations with your daughter?
>
> A: No, he did not.

Welch testified on his own behalf, and denied having a "sexual relationship" and "being with" with Amanda. During cross-examination of Welch, the Commonwealth introduced into

4

evidence one letter written by Welch to Amanda during his incarceration that stated in part:

> Well, I was doing fine till someone got into my s\*\*t, and read your letter to me. Then Ronnie talked to one of the wifes [sic] of one of the guys on my block . . . and told her I was a baby rapist so she told her husband and he told the whole jail that you and I were f\*\*king now I don't think I'll ever get out cause everyone is trying to kill me . . . I do love you and even my last thought will be of you and my last breath will say your name, Amanda.

In closing arguments, the Commonwealth asserted that the testimony provided by Amanda and the defendant's "confession" to Amanda's mother were sufficient to support the conviction.

### C.  Carnal Knowledge Statute

Welch was convicted under Code § 18.2-63 which provides:

> If any person carnally knows, without the use of force, a child thirteen years of age or older but under fifteen years of age, such person shall be guilty of a Class 4 felony . . . For the purposes of this section . . . (ii) "carnal knowledge" includes the acts of sexual intercourse, cunnilingus, fellatio, anallingus, anal intercourse, and animate and inanimate object sexual penetration.

It is well settled that penal statutes are strictly construed against the Commonwealth and in favor of a citizen's liberty. Martin v. Commonwealth, 224 Va. 298, 300, 295 S.E.2d 890, 892 (1982) (citing Cox v. Commonwealth, 220 Va. 22, 25, 255 S.E.2d 462, 464 (1979)).  "Such statutes may not be extended by implication; they must be applied to cases clearly described by

5

the language used." Id. (citing Price v. Commonwealth, 209 Va. 383, 385-86, 164 S.E.2d 676, 678 (1968)). Because "carnal knowledge" is defined by particular acts in the statute, Welch's conviction can stand only if the facts proven by the Commonwealth satisfy the elements of one or more of those specified acts. The Commonwealth conceded that the act in question in this case was sexual intercourse.

The elements constituting certain acts of "carnal knowledge" are well defined in our case law. A common element in each act, whether intercourse or sodomy, is that the Commonwealth has the burden to prove beyond a reasonable doubt that penetration, however slight, has occurred. See e.g., Moore v. Commonwealth, 254 Va. 184, 189, 491 S.E.2d 739, 741 (1997) ("[I]t is universally held that under an indictment charging statutory rape of a child . . . the prosecution must prove that there has been an actual penetration to some extent of the male sexual organ into the female sexual organ") (citing McCall v. Commonwealth, 192 Va. 422, 426, 65 S.E.2d 540, 542 (1951)); Horton v. Commonwealth, 255 Va. 606, 613, 499 S.E.2d 258, 261-62 (1998) (to prove cunnilingus, the Commonwealth must prove that there was "penetration of any portion of the vulva" by the mouth or tongue); Ashby v. Commonwealth, 208 Va. 443, 444, 158 S.E.2d 657, 658 (1968) (testimony that the boy placed his mouth "on" defendant's penis did not establish that the

6

penis was "in" the boy's mouth which is required to prove the penetration element of fellatio).

As the foregoing cases illustrate, typically appeals challenging the sufficiency of the evidence under the carnal knowledge statute involve a technical question of whether a particular act constituted "penetration." That is not the case here, where the record is devoid of any details regarding sexual acts between Welch and Amanda. The simple question before this Court is whether the Commonwealth can sustain a conviction for carnal knowledge based on testimony that the defendant and the child engaged in a "sexual relationship." The simple answer is "no;" more particularity is required.

This case aptly illustrates that vague terms, such as "sexual relationship," invite speculation that cannot suffice for proof beyond a reasonable doubt. Our case law regarding proof required for conviction of carnal knowledge makes it quite clear that proof of penetration must be elicited to support a conviction. Moore, 254 Va. at 189, 491 S.E.2d at 741. See also Horton, 255 Va. at 613, 499 S.E.2d at 261-62; Ashby, 208 Va. at 444, 158 S.E.2d at 658. The Commonwealth did not ask Amanda to explain her understanding of "sexual relationship," nor did it inquire about what she did "over twenty" times with Welch. We are left to speculate about what actually occurred.

7

The letter written by Welch does not assist the prosecution. The Commonwealth argued on appeal that Welch's letter is evidence against him because he did not deny the rumors circulating around the jail about his relationship with Amanda. We do not agree. The rule the Commonwealth seeks to invoke has been stated as follows:

> When a statement tending to incriminate one accused of committing a crime is made in his presence and hearing and such statement is not denied, contradicted, or objected to by him, both the statement and the fact of his failure to deny are admissible in a criminal prosecution against him, as evidence of his acquiescence in its truth. The basis of such rule is that the natural reaction of one accused of the commission of a crime or of implication therein is to deny the accusation if it is unjust or unfounded.

Dowden v. Commonwealth, 260 Va. 459, 469, 536 S.E.2d 437, 442 (2000) (citations omitted). The letter written by Welch fails to satisfy the rule quoted above in two respects. First, the rule requires that the accusation be "made in [the accused's] presence and hearing." However, Welch's letter does not reveal that a direct confrontation of this sort occurred. Rather, it states that "Ronnie talked to one of the wifes [sic] of one of the guys on my block . . . and told her I was a baby rapist so she told her husband and he told the whole jail." At most, the letter recites to Amanda what other people say are the charges against Welch. Second, the rule applies only when the accused fails to deny, contradict, or object in response to the

8

accusation. Obviously, Welch's letter was not intended to be his response to the rumors he recited; it was merely a communication to Amanda. As a result, Welch's letter is not evidence of an admission of guilt.

There may be a wide range of acts that could be fairly understood by a 14-year-old as sexual in nature, but some of those acts would not be prohibited under the carnal knowledge statute. That is precisely why a conviction under our carnal knowledge statute has always required specific evidence that leaves no reasonable doubt that the particular act performed is one of the acts proscribed. Such evidence did not exist in this case.

## III. Conclusion

The Commonwealth failed to carry its burden of proof in the case at bar. A bare allegation of "sexual relations," without more, does not prove one of the particular acts constituting "carnal knowledge" under Code § 18.2-63. We will reverse the judgment of the Court of Appeals and dismiss the indictment.

_Reversed and dismissed_.