Present: Hassell, C.J., Lacy, Keenan, Koontz, Lemons, and Agee, JJ., and Russell, S.J.

K. C. REILLY

v.  Record No. 060966

JOSHUA B. SHEPHERD

OPINION BY
SENIOR JUSTICE CHARLES S. RUSSELL
April 20, 2007

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Edward W. Hanson, Jr., Judge

This appeal challenges the sufficiency of the evidence to support a verdict awarding damages for malicious prosecution.

FACTS AND PROCEEDINGS

The essential facts are undisputed. Shortly before 4:00 a.m. on August 2, 2003, Joseph B. Brannon, the driver of a taxicab in Virginia Beach, was struck on the back of the head with a hard object and robbed of cash by a passenger who said he had a gun. The robber then left the taxi and fled the scene on foot.

Several days later, the case was assigned for investigation to K. C. Reilly, a detective in the robbery squad of the Virginia Beach Police Department. Reilly examined the report of the police officer who had interviewed the victim at the scene, the report of another detective who had made an initial investigation of the crime, the report of a crime scene technician who had examined the taxi within an hour after the event, and the analysis of latent fingerprints

the technician found on the taxi.  Reilly also personally interviewed Brannon, the victim.

Brannon told Reilly that the robber was a white male in his mid to late twenties, five feet eight to five feet ten inches tall, weighing 150 to 160 pounds, with "dirty blond hair in dreadlocks that were long."  The report of the detective who had responded to the scene on the night of the crime recorded Brannon's description of the robber as "W/M 5'7"-5'8" tall, 160-170 lbs. with dirty blond hair worn in DREADS . . . approximate age was mid to late twenties."[1]

The technician reported that four latent fingerprints had been taken from the taxi shortly after the crime but that only one of them had been found to match fingerprints on file.[2]  The technician told Reilly that he considered that fingerprint to be very recent because the taxi was wet with dew when he examined it less than an hour after the robbery and "the fingerprint would not have lasted with [those] conditions."

---

[1] The uniformed police officer who had responded to the scene on the night of the crime filed a report on a printed form in which had been entered the letter "B" in the space identifying the suspect's race.  Reilly testified that he regarded this as a typographical error since all other information from the victim described the perpetrator as Caucasian.

[2] All four fingerprints were found on the right rear door, door frame, and window.  The print matching the print in the police files was found on the outside of the right rear window.

2

Armed with that information, Reilly interviewed the victim again to ask whether he had any recollection that the robber had touched any part of the taxi. Reilly testified that Brannon replied that "he remembered the suspect touching the outside of the window, which was exactly where the fingerprint was recovered from." Reilly recovered from the local police database the information that the identified fingerprint belonged to Joshua Blaine Shepherd. Shepherd was described in the database as a white male, born July 1, 1977, (26 years old at the time of the offense), five feet nine inches tall, 150 pounds, with brown hair. Reilly testified that he considered this to be a nearly exact match, "probably the best I've ever seen in my career," to the description of the robber given by the victim.

The database also reported Shepherd's home address to be on "Gates Road," which Reilly ascertained to be Gates Landing Road, Virginia Beach, less than two miles from the point where the crime had been committed. Reilly considered this to be significant because the robber had fled the scene on foot, and "it's been my experience that people don't typically commit a robbery at their front door for fear of being identified."

Reilly testified that he had all the foregoing information by mid-September 2003, but that he waited until December to seek a warrant for Shepherd's arrest because he

3

wanted an opportunity to interview him.  Reilly made three or four visits to the address on Gates Landing Road and spoke with a neighbor, but was unsuccessful in locating Shepherd. He contacted the Division of Motor Vehicles, but found that there was no record of a Virginia driver's license or identification in Shepherd's name, and therefore no photograph of him appeared in the DMV records.[3]  The fingerprint identification had been taken from an arrest record made eight years earlier in the City of Chesapeake.  Reilly sought a photograph from the Chesapeake police, but was informed that no such photograph was on file.

On December 21, 2003, Reilly went before a magistrate in Virginia Beach and testified under oath to the facts substantially as stated above.  The magistrate made a finding of probable cause and issued warrants for Shepherd's arrest on the charges of robbery and use of a firearm in the commission of robbery.  Later, Reilly testified that, having exhausted all leads to finding Shepherd, "I felt that my best resource at that time to contact or to get Mr. Shepherd into custody was to enlist the aid of all law enforcement by placing the warrants on file."

---

[3] The DMV records listed Shepherd as the owner of a vehicle bearing Virginia license plates.  The Gates Landing Road address was given as the "vehicle address" but an address

4

On July 16, 2004, Shepherd, who was then living and working near Blacksburg, Virginia, drove through Petersburg, intending to return to Virginia Beach for a visit.  He had no knowledge of the outstanding warrants.  A Petersburg police officer stopped him for speeding, ascertained that there were warrants outstanding, and arrested him.  He spent six days in jail before he was released on bail.  When the warrants came before the general district court for preliminary hearing, Brannon, the victim, was unable to identify Shepherd as the person who had robbed him on August 2, 2003.  The Commonwealth Attorney then entered a nolle prosequi as to both warrants.

Shepherd filed this action for malicious prosecution against Reilly "personally and in his capacity as a police officer for the City Of Virginia Beach."  The City filed a demurrer, which the circuit court sustained on the ground of sovereign immunity, and the case went to a jury trial against Reilly solely in his individual capacity.  At the close of Shepherd's evidence, Reilly moved to strike on the ground that Shepherd had failed to prove two elements essential to the tort:  malice and a want of probable cause.  The circuit court denied the motion.  Reilly renewed the motion at the close of all the evidence, but the court again denied it.  The jury

in the area of Tampa, Florida, was given as "customer address."

5

returned a verdict awarding Shepherd $123,000 in compensatory damages upon which the court entered judgment.  We awarded Reilly an appeal.

## ANALYSIS

In an action for malicious prosecution, the plaintiff has the burden of proving four essential elements:  that the prosecution was (1) malicious, (2) instituted by or with the cooperation of the defendant, (3) without probable cause, and (4) terminated in a manner not unfavorable to the plaintiff. Baker v. Elmendorf 271 Va. 474, 476, 628 S.E.2d 358, 359 (2006).  The second and fourth of these are not at issue in this appeal and Shepherd concedes that there is no contention that Reilly had any personal ill-will against him, or that Reilly had ever known or heard of him before the case was assigned to him for investigation.  Nor does Shepherd contend that Reilly failed to make a full, accurate and honest disclosure to the magistrate of all material facts supporting his conclusion that probable cause existed.  Rather, Shepherd contends that Reilly lacked probable cause to initiate the prosecution and that the jury could properly infer malice from the lack of probable cause.

Actions for malicious prosecution arising from criminal proceedings are not favored in Virginia.  Ayyildiz v. Kidd, 220 Va. 1080, 1082, 266 S.E.2d 108, 110 (1980).  The

6

requirements for maintaining such actions are more stringent than those applied to other tort cases, and are imposed to encourage criminal prosecutions in appropriate cases without fear of reprisal by civil actions, criminal prosecutions being essential to the maintenance of an orderly society. Id. at 1082-83, 266 S.E.2d at 110-11.

Malice may be inferred from a lack of probable cause, but a lack of probable cause may not be inferred from malice. Bill Edwards Oldsmobile, Inc. v. Carey, 219 Va. 90, 100, 244 S.E.2d 767, 773 (1978). Accordingly, it is appropriate to begin by considering whether the evidence was sufficient to support a finding of probable cause. In this context, we have defined probable cause as "knowledge of such a state of facts and circumstances as excite the belief in a reasonable mind, acting on such facts and circumstances, that the plaintiff is guilty of the crime of which he is suspected." Commissary Concepts Mgmt. Corp. v. Mziguir, 267 Va. 586, 589-90, 594 S.E.2d 915, 917 (2004). Whether probable cause existed is determined as of the time when the action complained of was taken. Id. at 590, 594 S.E.2d at 917.

When Reilly obtained the warrants, he acted on the facts and circumstances then known to him: Shepherd matched, with remarkable accuracy, the detailed description of the robber given by the victim on the night of the crime; Shepherd's

7

fingerprint was identified in the exact location where the victim had seen the robber touch the taxi; the technician had concluded, within an hour of the robbery, that the fingerprint had been placed on the taxi very recently; and Shepherd's home was not far from the scene of the crime, from which the robber had fled on foot. There were no circumstances known to Reilly pointing to any person other than Shepherd as the perpetrator.

Because the facts relating to probable cause are not in dispute, on appeal the issue of their sufficiency to support the jury's determination is a question of law for determination by this Court. Lee v. Southland Corp., 219 Va. 23, 27, 244 S.E.2d 756, 759 (1978). Here, we find that the circumstances known to Reilly and presented by him to the magistrate were sufficient to "excite the belief in a reasonable mind" that Shepherd had committed the robbery. Accordingly, Shepherd's evidence was insufficient, as a matter of law, to warrant submission of the issue of the lack of probable cause to the jury. Because Shepherd failed to prove the lack of probable cause, an essential element of the tort of malicious prosecution, it is unnecessary to address the issue of malice.

CONCLUSION

For the reasons stated above, the circuit court erred in denying the defendant's motion to strike the plaintiff's

8

evidence.  Accordingly, we will reverse the judgment of the circuit court and enter final judgment here in favor of the defendant.

<u>Reversed and final judgment</u>.