COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Clements and Petty
Argued at Salem, Virginia


CHAD WILLIAM EDWARD ROBESON

MEMORANDUM OPINION* BY
v.      Record No. 1795-07-3          JUDGE WILLIAM G. PETTY
                                      MAY 27, 2008

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF BOTETOURT COUNTY
Michael S. Irvine, Judge

Thomas E. Wray for appellant.

Karen Misbach, Assistant Attorney General II (Robert F.
McDonnell, Attorney General, on brief), for appellee.


Following a bench trial, appellant, Chad William Edward Robeson, was convicted of

sodomy of a child in violation of Code § 18.2-67.1. He challenges this conviction, arguing that the

trial court abused its discretion when it allowed the Commonwealth to reopen its case-in-chief and

that the evidence adduced below was insufficient to support his conviction. We disagree and affirm

Robeson's conviction.

## I. BACKGROUND

On appeal, we review the evidence in the "light most favorable to" the Commonwealth.

Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003) (citation omitted). This

principle requires us to "'discard the evidence of the accused in conflict with that of the

Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all

fair inferences that may be drawn therefrom.'" Kelly v. Commonwealth, 41 Va. App. 250, 254, 584

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

S.E.2d 444, 446 (2003) (*en banc*) (quoting <u>Watkins v. Commonwealth</u>, 26 Va. App. 335, 348, 494

S.E.2d 859, 866 (1998)).

The record establishes that the victim, H.H., had known Robeson since she was six years

old. He was a friend of her brother, and had lived with her family "off and on" for some time. At

the time of the offense, H.H. was twelve and Robeson was nineteen. On the victim's last day of

school, she and Robeson, whom she considered her boyfriend, were alone together when he began

kissing her. Eventually, H.H. unbuttoned her pants and "he started kissing [her] there." H.H.

described the crime as follows:

> [Commonwealth's attorney]: And you said that you unbuttoned
> your pants and did he, did he have oral sex with you?
>
> [H.H.]: Yes.
>
> [Commonwealth's attorney]: Okay. And do you know how long
> that lasted?
>
> [H.H.]: Right around five minutes, five to ten minutes.
>
> [Commonwealth's attorney]: Okay. And were you, did he say
> anything to you at the time or did you say anything to him at the
> time?
>
> [H.H.]: No.
>
> [Commonwealth's attorney]: [W]hat made the act stop?
>
> [H.H.]: Well I knew my mom was coming home in a few
> minutes . . . .
>
>        \*     \*     \*     \*     \*     \*     \*
>
> [Commonwealth's attorney]: And when did you first tell
> somebody about this?
>
> [H.H.]: Well I, at first I had a urinary tract infection and my mom
> took me to the doctor. And they gave me medicine and then it just
> kept on and kept on . . . .
>
>        \*     \*     \*     \*     \*     \*     \*
>
> [H.H.]: Later we found out it was Herpes Type I . . . .

\* \* \* \* \* \* \*

[Commonwealth's attorney]: Okay. And is, I guess, is [Robeson] the only person that you've done this with?

[H.H.]: Yes.

[Commonwealth's attorney]: Okay. And the herpes that you had was in your vaginal area?

[H.H.]: Yes.

[Commonwealth's attorney]: Okay. The person who, as you indicated, I guess, had his mouth in your vagina, is he in the courtroom?

[H.H.]: Yes.

[Commonwealth's attorney]: Could you point him out please?

[H.H.]: I'm sorry, what was the question?

[Commonwealth's attorney]: The person, I guess the person who performed this act, is he in the courtroom?

\* \* \* \* \* \* \*

[Commonwealth's attorney]: Okay. The record reflects she identified the defendant, Your Honor.

After H.H. was diagnosed with herpes, she told her mother about this incident. Following an investigation, Investigator M.E. McFarland of the Botetourt County Sheriff's Office arrested Robeson. At trial, the Commonwealth introduced a taped conversation between McFarland and Robeson containing the following dialog:

[McFarland]: [T]he situation between you and [H.H.] and the oral sodomy of her [sic]. And we call it oral sodomy but it's oral sex. You know what I'm, do you know what I'm talking about?

[Robeson]: Yeah.

[McFarland]: Okay, and that being the last situation where your mouth was on her vaginal area and that was um, the end, it happened over the course of about five times, um, over the last year. Um, was it any more than that, or was it just that?

[Robeson]: That, that was it.

- 3 -

[McFarland]: Just the oral part?

[Robeson]: Oral, yeah.

       *       *       *       *       *       *       *

[McFarland]: Okay, and there were times that her mouth was on you?

[Robeson]: Yeah.

[McFarland]: And I mean your penis and times that your mouth was on her vaginal area. And it was no more than that?

[Robeson]: No more than that.

       *       *       *       *       *       *       *

[McFarland]: And did you know she was twelve when you had oral sex with her?

[Robeson]: Yeah.

At the conclusion of Investigator McFarland's testimony, the Commonwealth rested. Robeson moved to strike, arguing that the Commonwealth had not presented evidence on the element of penetration. The Commonwealth responded that the victim's testimony, as well as Robeson's confession to Investigator McFarland, were sufficient to prove that element of the offense. The Commonwealth's attorney also argued that the victim testified that Robeson's "mouth [was] in [her] vagina" in answer to a question that the Commonwealth's attorney specifically asked. After some discussion, and after the trial court and the parties listened to the transcript tape of the victim's testimony, the Commonwealth moved to reopen its case to recall the victim to clarify whether there had been penetration. The trial court granted the Commonwealth's motion, and made the following statement:

> When the question was asked to the child witness, the question was a leading question, it was not objected to but it was is the person who had his mouth in your vagina in the courtroom today and the answer to that was yes. The problem the Court has is that the [victim] really didn't say that other than the person's in the courtroom. She had never previously testified that his mouth was

- 4 -

in her vagina. . . . I mean she said yes, the person is in the courtroom. But she had never said where his mouth was other than he had kissed her. I'm going to grant the Commonwealth's motion to reopen the case. I'm going to clarify this to see really where his mouth was. That's the crux of the case. That's within the discretion of the Court.

The Commonwealth's attorney then recalled the victim, who testified as follows:

[Commonwealth's attorney]: During the five minute period that you described that he was having oral sex with you [sic]. I mean what were you feeling, what did he do? If you remember.

[H.H.]: Well I can't remember exactly, you know, but it kind of felt wet.

            *      *      *      *      *      *      *

[Commonwealth's attorney]: Okay, and where did it feel like he was touching?

[H.H.]: Well on my vagina.

[Commonwealth's attorney]: Do you know whether it was his mouth or his tongue [touching you]?

[H.H.]: [I]t probably was his tongue.

            *      *      *      *      *      *      *

[Commonwealth's attorney]: Were you watching what he was doing?

[H.H.]: No.

[Commonwealth's attorney]: Okay. So this is just based on what you felt?

[H.H.]: Yeah.

            *      *      *      *      *      *      *

[Trial Court]: What they're trying to figure out, [H.H.], and this is probably kind of simple. [The Commonwealth's attorney] has asked you about the opening at your vagina.

[H.H.]: Um-hmm.

[Trial Court]: Was he inside or outside?

[H.H.]: He was inside.

[Trial Court]: And he was inside with what you think was his tongue or something wet?

[H.H.] Yes.

\*    \*    \*    \*    \*    \*    \*

[Commonwealth's attorney]: You also feel like he was on the outside as well?

[H.H.]: Yeah.

[Commonwealth's attorney]: Is that what you're, I mean is that true?

[H.H.]: Yeah.

[Commonwealth's attorney]: Do you feel like he was on the outside as well . . . ?

[H.H.]: Yeah.

The trial court determined that the Commonwealth met its burden. Accordingly, the trial court denied Robeson's motion to strike. The trial court ultimately found Robeson guilty, and subsequently sentenced him to twenty-five years in prison with twenty years suspended. This appeal followed.

## II. ANALYSIS

### A. Reopening The Commonwealth's Case

Robeson contends that the trial court abused its discretion by allowing the Commonwealth to reopen its case and submit further evidence on the element of penetration. Based on our review of the record and the application of relevant legal principles, we disagree.

### Standard of Review

"We have long followed the rule that the order of proof is a matter within the sound discretion of the trial court and [a reviewing court] will not reverse the judgment . . . unless it affirmatively appears that this discretion has been abused." Hargraves v. Commonwealth, 219 Va.

604, 608, 248 S.E.2d 817, 817 (1978) (citing Flick v. Commonwealth, 97 Va. 766, 774, 34 S.E. 39, 42 (1899); Mundy v. Commonwealth, 161 Va. 1049, 1064, 171 S.E. 691, 696 (1933)). This rule includes the principle that the trial court may, in its discretion, determine whether "the Commonwealth should be permitted to introduce additional evidence in chief after it has rested." Chrisman v. Commonwealth, 3 Va. App. 371, 375-76, 349 S.E.2d 899, 902 (1986) (citations omitted). "When all of the testimony has been concluded – and all of the witnesses excused – if the trial court exercises its discretion and permits the introduction of other testimony, the record must affirmatively show that the trial court abused its discretion if the appellate court is to reverse based on the trial court's ruling" allowing the Commonwealth to reopen its case. Id. at 376, 349 S.E.2d at 902.

Discussion

While the trial court has wide discretion in determining whether to allow a party to reopen its case, "such discretion is judicial and not arbitrary." Fink v. Higgins Gas & Oil Co., Inc., 203 Va. 86, 89, 122 S.E.2d 539, 542 (1961). Prior decisions of this Court and our Supreme Court have given us guidance in determining whether a trial court abuses its discretion in permitting further evidence.

First, the trial court's discretion "should be reasonably exercised so as not to injure the [non-moving] party through surprise or otherwise, and so as not to deprive either party of the opportunity to introduce material evidence." Id. For instance, in Fink, a personal injury case, the Virginia Supreme Court reversed a trial court's refusal to allow the plaintiff to reopen his case. There, the Court looked to the fact that the plaintiff had failed to introduce evidence regarding causation due to a mere oversight and would have been able to introduce the evidence in question "without any inconvenience to the defendant and with no appreciable amount of delay." Id. at 91, 122 S.E.2d at 543 (citation omitted). In Lebedun v. Commonwealth, 27 Va. App. 697, 715-16,

501 S.E.2d 427, 436 (1998), this Court affirmed the trial court's *sua sponte* decision to allow the Commonwealth to reopen its case after the trial court noticed that the Commonwealth did not present an in-court identification of the defendant. We stated, "[a]lthough the trial judge is a neutral and impartial arbiter and should not abandon that role by becoming an advocate, the trial judge is not required to sit idly and observe a miscarriage of justice occur because one party inadvertently overlooks establishing a routine element of proof[,]" and concluded that the trial court had not abused its discretion in allowing further evidence. Id. at 716, 501 S.E.2d at 436.

In Chrisman, 3 Va. App. at 375-76, 349 S.E.2d at 902, this Court affirmed a trial court's decision to allow the Commonwealth to reopen its case to present further evidence regarding whether a victim in a sodomy case understood the meaning of the term "penetration." We held that the trial court "acted with due regard to conscientious judgment, not arbitrary action" when it allowed the Commonwealth to reopen its case for a "stated limited purpose." Id.

We hold that the trial court did not abuse its discretion when it allowed further testimony from the victim in this case. The trial court acted conscientiously in making its decision to grant leave to the Commonwealth to reopen. The trial court had the transcript tape re-wound and reviewed the victim's testimony, focusing on the following excerpt:

> [Commonwealth's attorney]: Okay. The person who, as you indicated, I guess, had his mouth in your vagina, is he in the courtroom?
>
> [H.H.]: Yes.
>
> [Commonwealth's attorney]: Could you point him out please?
>
> [H.H.]: I'm sorry, what was the question?
>
> [Commonwealth's attorney]: The person, I guess the person who performed this act, is he in the courtroom?

The compound question posed by the Commonwealth was, without question, confusing. It prefaced the in-court identification of Robeson as the assailant with the assumption that the victim

had previously testified to the act of penetration. Thus, it is not surprising that the Commonwealth's attorney, the victim, and the trial court were apparently all confused regarding the meaning of the victim's affirmative response. It was entirely appropriate for the trial court to allow the Commonwealth to reopen its case for further limited questioning of the victim in order to clarify her answer. Based on our prior cases, we cannot say that the trial court abused its discretion in allowing the Commonwealth to reopen its case for further limited questioning of the victim in order to clarify her answer.

### B. Sufficiency Of The Evidence

In order to convict Robeson of forcible sodomy in this case, the Commonwealth had to prove, as pertinent to the allegations in this case that Robeson had "engage[d] in cunnilingus . . . with a complaining witness [who] is less than 13 years of age." In his motion to strike, Robeson relied on Welch v. Commonwealth, 271 Va. 558, 563-64, 628 S.E.2d 340, 343 (2006), to argue that the Commonwealth had not proven the element of penetration necessary to show that he committed sodomy on the child. In Welch, our Supreme Court restated its earlier holding that, "to prove cunnilingus, the Commonwealth must prove that there was 'penetration of any portion of the vulva' by the mouth or tongue." Id. at 563-64, 628 S.E.2d at 343 (quoting Horton v. Commonwealth, 255 Va. 606, 613, 499 S.E.2d 258, 261-62 (1998)). While Robeson correctly stated the law in his motion to strike, we cannot say that the evidence in this case is so scant that the trier of fact erred in finding the element of penetration had been proven.

### Standard of Review

"[O]n appeal, the issue of" the sufficiency of the evidence "to support the [trier of fact's] determination is a question of law for determination by [the reviewing] Court." Reilly v. Shepherd, 273 Va. 728, 733, 643 S.E.2d 216, 219 (2007) (citing Lee v. Southland Corp., 219 Va. 23, 27, 244 S.E.2d 756, 759 (1978)). When considering the sufficiency of the evidence

- 9 -

presented below, we "presume the judgment of the trial court to be correct" and reverse only if

the trial court's decision is "plainly wrong or without evidence to support it." Davis v.

Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002); see also Code § 8.01-680.

The credibility of the witnesses, the weight accorded testimony, and the inferences drawn from

proven facts are matters to be determined by the fact finder. Long v. Commonwealth, 8

Va. App. 194, 199, 379 S.E.2d 473, 476 (1989).

We do not, therefore, "substitute our judgment for that of the trier of fact." Wactor v.

Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002). "Instead, the

relevant question is whether, after viewing the evidence in the light most favorable to the

prosecution, any rational trier of fact could have found the essential elements of the crime

beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).

Evidence Presented At Trial

At trial, the Commonwealth introduced Robeson's taped confession into evidence

without objection.[1] As recounted above, Robeson confirmed that he and the victim had had oral

sex "over the course of about five times" and that, specifically, his "mouth was on [the victim's]

vaginal area."

Moreover, the record contains significant evidence that not only corroborated Robeson's

confession, but also constituted sufficient independent evidence of his guilt. The victim testified

that she considered Robeson her "boyfriend," that he "unbuttoned her pants" and had "oral sex"

with her for five to ten minutes, and that she contracted herpes as a result of her contact with

---

[1] In Claxton v. City of Lynchburg, 15 Va. App. 152, 155, 421 S.E.2d 891, 893 (1992), we defined a confession as "a statement admitting or acknowledging all facts necessary for conviction of the crimes charged." Here, Robeson acknowledged that he had oral sex with the victim, that his mouth was on her vaginal area, and that she was twelve years old at the time-- facts fulfilling the elements of Code § 18.2-67.1. Thus, Robeson's statement meets the legal definition of a confession.

Robeson. The victim further testified that based on what she felt she concluded that Robeson's tongue was both on and "in the opening" of her vagina. Finally, in response to the trial court's questions, the victim testified that Robeson put what she believed to be his tongue inside her vagina. We conclude that the statement by Robeson, combined with the victim's testimony, sufficiently establishes penetration. See Newby v. Commonwealth, 255 Va. 606, 610-11, 499 S.E.2d 258, 259 (1998) (affirming a conviction for sodomy and holding that the element of penetration was established when the victim testified that Newby "put his mouth on [her] vaginal area . . ."); see also Love v. Commonwealth, 18 Va. App. 84, 88, 441 S.E.2d 709, 712 (1994) ("[I]nsertion of the defendant's tongue into the victim's vagina need not be shown to prove cunnilingus."). Thus, the trial court's verdict was supported by ample evidence of each and every element of the offense of sodomy of a child.

### III. CONCLUSION

Based on the foregoing, we do not find error on this record. Accordingly, we affirm.

Affirmed.