PRESENT: All the Justices

SHIRLEY DILL

v. Record No. 200823

OPINION BY
JUSTICE S. BERNARD GOODWYN
JULY 8, 2021

KROGER LIMITED PARTNERSHIP I, ET AL.

FROM THE CIRCUIT COURT OF THE CITY OF STAUNTON
Charles L. Ricketts, III, Judge Designate

In this appeal, we consider whether the circuit court erred in granting a motion to strike

claims of malicious prosecution and false imprisonment, which were brought by a person who

was mistakenly identified, charged, and prosecuted as a shoplifter.

## I. BACKGROUND

Shirley Dill (Dill) is a 70-year-old woman who resides in Staunton, Virginia. Dill

frequents a Kroger supermarket, located in Staunton and operated by Kroger Limited Partnership

I (Kroger).

On February 22, 2017, Sarah Lynch (Lynch), one of the managers for the Kroger

supermarket, was performing routine tasks around the store when she paused by the checkout

counters because she saw a shopper place an unscanned package of strawberries into a shopping

bag. Lynch, who asserts that she believed the shopper was named Shirley Dill, told the shopper

that she did not think the strawberries had been scanned. The shopper scanned the package of

strawberries.

Following the incident, Lynch sent an e-mail to one of Kroger's asset protection

specialists, Gina Harrison (Harrison). The subject line of the e-mail read "Shirley Dill," and the

message stated "I caught her trying to put a box of strawberries in her bag without paying for

them. I should have let her leave and got her for stealing, but could you look on camera and see

if she got us for anything?"

Harrison investigated the incident and discovered that the Kroger supermarket shopper card (the Plus Card) used for the transaction witnessed by Lynch was registered to Susan Rosenmeier (Rosenmeier), not Dill. When this fact was brought to Lynch's attention, Lynch suggested that Dill must have borrowed and used a relative's Plus Card, because she knew that the shopper she saw was Shirley Dill. Harrison believed Lynch. Harrison continued to investigate by looking through other transactions linked to Rosenmeier's Plus Card. She found two video recordings of the same shopper stealing roughly $40 worth of items from Kroger.

Harrison reported the incidents to the Staunton Police Department, and she showed the videos to Staunton Police Investigator Stewart Green (Investigator Green), the police officer who responded to her report. Harrison, based upon her discussions with Lynch, identified the shopper in the video as Shirley Dill. She told Investigator Green that a Kroger manager knew the shopper and verified the shopper's identity. Investigator Green returned to the police station and ran a criminal history check on Dill. That same afternoon, relying on Harrison's report and Lynch's identification of the shopper, Investigator Green applied for and obtained two petty larceny misdemeanor warrants for shoplifting against Dill.

After obtaining the warrants of arrest, Investigator Green called Dill to inform her that he had two warrants for her arrest for shoplifting at the Kroger store. Dill denied stealing from Kroger and protested that she was innocent. She stated that she had a Plus Card registered in her name and asserted that she used that card to shop at the Kroger store. According to Dill, Investigator Green responded that Kroger did not make mistakes when reporting theft and that Kroger had a videotape of her stealing on two different occasions. Investigator Green ordered Dill to report to the police station the next day.

2

On March 1, 2017, Dill reported to the police station, as instructed, and she was taken before a magistrate, who placed her on bond, ordered her to remain in the Commonwealth, and prohibited her from visiting the Kroger store. Dill borrowed money and eventually engaged a lawyer to defend her on the charges. The criminal trial was continued multiple times over several months. Shortly before the scheduled criminal trial, in May, her lawyer viewed the Kroger supermarket surveillance video at the Commonwealth's attorney's office. As soon as Dill's lawyer saw the shopper in the video, he told the Commonwealth's attorney that "you would have to be blind to think that that was Shirley Dill." The Commonwealth's attorney agreed and moved to dismiss the charges on the day of trial; the trial court dismissed, with prejudice, the charges against Dill.

In June 2017, another shoplifting incident occurred at the Kroger supermarket, and it involved the same shopper whom Lynch had previously identified as Dill. This time, however, Harrison apprehended the shoplifter at the time of the incident. When Harrison asked for the shopper's driver's license, she saw that the name on the license was Susan Rosenmeier, which was also the name associated with the Plus Card that Harrison used to investigate the thefts for which Dill was charged. Harrison called Investigator Green and told him of the mistake previously made in identifying the purported shoplifter. Investigator Green informed Harrison that Dill had already been charged and that the trial court had already dismissed the cases because it was obvious that Dill had been misidentified.

On January 8, 2018, Dill filed a complaint against Kroger and Lynch in the Circuit Court of the City of Staunton, asserting claims of malicious prosecution, false imprisonment, intentional infliction of emotional distress, and defamation. In response, Kroger and Lynch together filed a single responsive pleading, which contained their grounds for demurrer and an

3

answer. The circuit court denied Kroger and Lynch's demurrers, and on February 12, 2020, the circuit court began a jury trial on Dill's claims.

At trial, during Dill's case-in-chief, Lynch agreed that it was Rosenmeier whom she saw with the unscanned package of strawberries at the checkout counter. She explained that she mistakenly thought that Rosenmeier was named Shirley Dill because, in the past, prior to the incident involving the strawberries, a third party—she did not remember who—had told her that the person now known to be Rosenmeier, was named Shirley Dill. She did not identify the third party or recount the time frame or circumstances surrounding why she had previously asked about the customer's name. Lynch said that she regularly saw Rosenmeier at the Kroger supermarket and had been referring to her as "Shirley." She stated that she had never seen Rosenmeier behave suspiciously, except for that time when she saw Rosenmeier place unscanned strawberries into a shopping bag. Lynch testified that when she saw Rosenmeier take the unscanned strawberries, she had called out, "Shirley," at which point Rosenmeier looked up at Lynch, who then told Rosenmeier that the strawberries had not been scanned.

Lynch admitted that she oversaw two earlier investigations concerning incidents, at or around the Kroger store, involving Dill. The first incident occurred in September 2015 when Dill was injured in the Kroger supermarket parking lot. Lynch wrote the incident report for Kroger and spoke with Dill to ask for Dill's identifying information. In that incident report, Lynch recorded that she believed Dill was "out for something" because Dill's statements were inconsistent. When asked why she thought Rosenmeier was Dill, although she had previously met Dill, Lynch stated that she had no recollection of this prior meeting with Dill and was reminded about the incident report only when it was brought to her attention during the discovery process undertaken in the instant case. The second incident report that Lynch wrote

4

involving Dill concerned a Dr. Pepper sales agent's allegation that Dill was stalking him and had stolen his jacket. Lynch testified that she did not believe the sales agent's claims, nonetheless she conducted an investigation to determine if the sales agent's jacket had been stolen by Dill. Lynch stated that she determined that the jacket had not been taken by Dill, but she did not discuss the issue with Dill face to face.

Despite the two prior incidents she investigated and reported on involving Dill, Lynch claimed that she did not know Dill and would not have recognized her prior to the instant case. She insisted that she had no "ax[e] to grind" against Dill.

Harrison testified that when she received Lynch's e-mail, she recognized the name Shirley Dill. She admitted that she was familiar with the name Shirley Dill because of the incident involving the Dr. Pepper sales agent's claim that Dill was stalking him and had stolen from him. She conceded that, unlike Lynch who had met Dill and spoken with her face to face, Harrison had never seen Dill prior to the instant proceedings.

Investigator Green testified that after his meeting with Harrison, he was no longer trying to confirm the identity of the shopper caught on the video surveillance. He stated that Harrison had given no indication that Kroger was uncertain about the shoplifter's identity. He asserted that Harrison reported that a store manager, i.e., Lynch, knew the shoplifter and identified the shoplifter as Shirley Dill. Investigator Green explained that, based on the video surveillance evidence provided by Harrison and the positive identification made by Lynch, he believed he had probable cause to apply for Dill's arrest. He added that the magistrate, who reviewed his application for the warrants of arrest, evidently agreed with him because the magistrate issued two warrants for Dill's arrest.

5

After Dill rested her case, Kroger and Lynch moved to strike Dill's case-in-chief, arguing that this was a case of simple mistaken identity. As to the malicious prosecution claim, Kroger and Lynch argued that Harrison and Lynch had probable cause to report Dill to law enforcement because they knew that a person had shoplifted from the Kroger supermarket, and "they thought at that time that they had the correct person." They averred that the evidence indicated that Harrison and Lynch did not act maliciously; their identification of Dill as the perpetrator was a simple mistake. Regarding the false imprisonment claim, Kroger and Lynch argued that a false arrest is the act of the arresting officer; the arrest is not the act of the informant, even if the informant gave wrong information.

Dill responded that the language in Lynch's incident report concerning the parking lot incident and the language in Lynch's e-mail to Harrison concerning the strawberry incident, both of which besmirched Dill, were evidence that Lynch had a vendetta against Dill. Dill added that a reasonably prudent person would not have positively identified Dill by name as the perpetrator based upon the evidence known to Lynch and Harrison at the time they reported the incident to Investigator Green. Concerning the false imprisonment claim, Dill responded that, regardless of who actually apprehends the suspect, a person who provides a false report to law enforcement officers, which results in an arrest, should be held liable for false imprisonment.

The circuit court granted Kroger and Lynch's motion to strike as to all of Dill's claims, holding that "this is a mistake case." As regards the malicious prosecution claim, the circuit court held that Dill presented no evidence that Kroger and Lynch acted with malice because there was no evidence that Lynch had any "motive other than . . . a desire to see justice done to enforce the law and to punish the guilty." With regard to the false imprisonment claim, the circuit court held that Dill did not present any evidence that Kroger and Lynch participated in

Dill's false arrest. The circuit court observed that even though Lynch, Harrison, and Investigator Green were mistaken about the shopper's identity, they still had probable cause to believe that "the person they saw on the video" stole items from the Kroger supermarket. The circuit court also granted the motion to strike as regards the intentional infliction of emotional distress and defamation claims, holding that there was no evidence to show that Lynch acted with the specific purpose and intent to either cause Dill emotional distress or to defame Dill.

The circuit court entered a final order memorializing its grant of Kroger and Lynch's motion to strike. Dill appeals. Three assignments of error have been granted:

1. The Circuit Court of the City of Staunton erred in granting Defendants' motion to strike Plaintiff's case at the close of Plaintiff's case in chief by failing to properly apply the applicable standard of review as it failed to view the evidence in the light most favorable to the Plaintiff, improperly assessed the weight and credibility of the evidence, and rejected reasonable inferences supported by the evidence, thereby denying Plaintiff a trial by jury.

2. The Circuit Court of the City of Staunton erred in granting Defendants' motion to strike Plaintiff's claim of malicious prosecution at the conclusion of Plaintiff's case in chief, when it found Defendants had no malicious intent.

3. The Circuit Court of the City of Staunton erred in granting Defendants' motion to strike Plaintiff's claim of false imprisonment at the conclusion of Plaintiff's case in chief, when it found Defendants had no malicious intent and did not participate in Plaintiff's arrest.

## II. ANALYSIS

We review a circuit court's decision on a motion to strike in the light most favorable to the non-moving party, and the non-moving party "must be given the benefit of all substantial conflict in the evidence, and all fair inferences that may be drawn therefrom." *Egan v. Butler*, 290 Va. 62, 73 (2015) (internal quotation marks omitted).

A circuit court must rule on a motion to strike based on the presumption that the jury will believe all the evidence favorable to the plaintiff, as well as all reasonable inferences that a jury might draw therefrom in favor of the plaintiff. *Tahboub v. Thiagarajah*, 298 Va. 366, 371

7

(2020); *Green v. Ingram*, 269 Va. 281, 290 (2005). When evaluating a motion to strike, the circuit court must not judge the weight or credibility of evidence, because to do so "would invade the province of the jury." *Tahboub*, 298 Va. at 371; *see Green*, 269 Va. at 290. We granted Dill's assignments of error concerning her claims that the circuit court erred in granting the motions to strike her malicious prosecution and false imprisonment claims.

## A. Malicious Prosecution

To prevail in an action for malicious prosecution, a plaintiff must prove that the prosecution was "(1) malicious; (2) instituted by or with the cooperation of the defendant; (3) without probable cause; and (4) terminated in a manner not unfavorable to the plaintiff." *Lewis v. Kei*, 281 Va. 715, 722 (2011). The parties in this case put in issue only the first and third elements. "Actions for malicious prosecution arising from criminal proceedings are not favored in Virginia and the requirements for maintaining such actions are more stringent than those applied to other tort cases to ensure that criminal prosecutions are brought in appropriate cases without fear of reprisal by civil actions." *Id.* at 722-23.

Dill contends it was the jury's role to determine if her evidence was sufficient to prove the elements of malice and lack of probable cause necessary to support her claim of malicious prosecution. She argues that there was sufficient evidence for a jury to find that Kroger and Lynch did not have probable cause to believe that Dill was the purported shoplifter, and therefore that the jury could properly find that they acted with legal malice in making that claim to the police.

Kroger and Lynch argue that Dill presented no direct evidence that Kroger and Lynch intended to act maliciously, thus the witnesses' testimony asserting the absence of malice was binding upon Dill. Kroger and Lynch add that malice cannot be inferred from their actions when

8

they acted with probable cause in reporting a theft, which indisputably occurred; they argue it was not their fault that the police officer did not confirm the shoplifter's identity before charging Dill. We find Kroger and Lynch's arguments unpersuasive.

## 1. Lack of Probable Cause

"We have defined probable cause as knowledge of such facts and circumstances as excite the belief in a reasonable mind, acting on such facts and circumstances, that the plaintiff is guilty of the crime of which he is suspected." *Lewis*, 281 Va. at 723 (internal quotation marks omitted). The lack of probable cause is an essential element of the tort of malicious prosecution. *Reilly v. Shepherd*, 273 Va. 728, 734 (2007). Accordingly, it is appropriate to begin our analysis by considering whether the evidence presented in Dill's case-in-chief, viewed in the light most favorable to Dill, supports the circuit court's granting of the motion to strike, upon it concluding that probable cause to charge Dill with shoplifting existed, as a matter of law.

When there is a conflict of evidence concerning probable cause, the issue of whether probable cause existed is a question reserved for the jury's determination. *Giant of Va., Inc. v. Pigg*, 207 Va. 679, 684 (1967); *O'Connor v. Tice*, 281 Va. 1, 9 (2011).

In this instance, there is undoubted probable cause to believe that the thefts occurred. However, viewing the evidence in the light most favorable to Dill, there is conflict in the evidence concerning probable cause to believe that Dill was the shoplifter seen in Kroger's store. The Plus Card used by the perpetrator was registered to Rosenmeier. Harrison uncovered incidents of theft by pulling up videos connected to transactions using Rosenmeier's Plus Card. Undisputedly, the person on the video did not resemble Dill. There was no physical or videotape evidence connecting Dill to the thefts.

9

Lynch claims that she identified Dill as the thief because some unidentified third person had, at some point in the past, told Lynch that Rosenmeier, the person Lynch saw shoplifting, was Shirley Dill. However, there is documentary evidence that Lynch had previously met and talked to the real Dill, and that Lynch had also written another report for Kroger concerning Dill, before the shoplifting allegations. Based upon the conflicting evidence and the inferences which could be drawn from that evidence, it was for a jury to determine whether probable cause existed for Lynch and Kroger to believe that it was Dill who actually perpetrated the crimes using Rosenmeier's Plus Card. In evaluating Kroger and Lynch's motion to strike, viewing the evidence and inferences drawn therefrom in the light most favorable to Dill, there was a conflict in the evidence concerning probable cause, and the circuit court should have determined that whether probable cause existed was a question for the jury to decide.

2. Malice

In the context of malicious prosecution actions, malice is "any *controlling* motive other than a good faith desire to further the ends of justice, enforce obedience to the criminal laws, suppress crime, or see that the guilty are punished." *Hudson v. Lanier*, 255 Va. 330, 333 (1998). "It is not necessary to prove actual spite, hatred, ill will, or grudge against or desire to injure the person charged with the crime." *Freezer v. Miller*, 163 Va. 180, 202, 207 (1934). We have previously held that an individual acts maliciously if she initiates a criminal prosecution "upon no or such slight grounds of suspicion as to indicate a general disregard of [others]." *Id.* In other words, an individual pursues a criminal prosecution maliciously if her basis for suspecting a defendant is so tenuous that the prosecution can be said to have been "directed by chance" against the defendant. *Id.*

10

A jury may infer malice from a history of animosity between the parties because the determination of malice is based on the parties' entire course of conduct towards each other. *Pallas v. Zaharopoulos*, 219 Va. 751, 755, 757 (1979). Additionally, a jury may infer malice from a lack of probable cause, thus evidence showing lack of probable cause is always admissible to prove malice. *Reilly*, 273 Va. at 733; *Freezer*, 163 Va. at 204. In previous instances when we have inferred malice from the lack of probable cause, we have sometimes referred to such malice as "legal malice." *See Giant of Va., Inc.*, 207 Va. at 685.

"The existence of malice 'is always a question for the jury under all the circumstances of the case,'" if there is sufficient evidence to make it a jury question. *See id.* (quoting *Clinchfield Coal Corp. v. Redd*, 123 Va. 420, 443, 444 (1918)). Similarly, the inference of malice from a lack of probable cause is usually a question reserved for the jury's determination. *Clinchfield Coal Corp.*, 123 Va. at 443. Further, while in an action for malicious prosecution, malice may be inferred from lack of probable cause if the circumstances warrant that inference, the inference may be repelled by other circumstances, despite the lack of probable cause for the prosecution. *See id.* at 446; *Southern Ry. Co. v. Mosby*, 112 Va. 169, 179-80 (1911).

In the instant case, there is evidence which supports a finding of malice because Kroger and Lynch reported Dill, by name, to the police as the perpetrator of two crimes, despite video evidence that the crime was perpetrated by someone else who bore no physical resemblance to Dill, and who used her own Kroger Plus Card while perpetrating the crimes. The Plus Card used in the transactions was registered to Rosenmeier; inexplicably neither Lynch nor Harrison investigated their conjecture that Dill was the user of the card and that she was somehow related to Rosenmeier and that Dill used Rosenmeier's Plus Card. Dill provided evidence that Lynch had previously encountered Dill and had a history of heightened suspicion against Dill, as

11

illustrated in the incident report prepared by Lynch when Dill complained of an injury sustained in the Kroger parking lot. Lynch had also been tasked with investigating another reported incident concerning Dill in the Kroger store. Although Lynch's professed motive for sending Harrison an e-mail, which requested further investigation of Dill as the thief, after the incident involving the strawberries, could have been solely to "suppress crime," inferences to the contrary may be drawn from the evidence when viewed in the light most favorable to Dill.

Dill argues that the circuit court did not apply the proper evidentiary standard to the defendants' motion to strike, which required the circuit court to examine the evidence in the light most favorable to Dill. Instead, the circuit court weighed the evidence and improperly made findings of fact; it accepted some testimony, disregarded other testimony, and after having done so concluded that in its "view of the case, this is a mistake case." We agree with Dill that the circuit court did not view the evidence in the light most favorable to Dill, in ruling upon the motion to strike, and thus, applied an improper evidentiary standard in ruling upon Kroger and Lynch's motion to strike Dill's malicious prosecution claim.

The circuit court erred in granting Kroger and Lynch's motion to strike Dill's malicious prosecution claim because it ignored the evidence that was favorable to Dill when it made a finding of fact, based upon Lynch's testimony, that Lynch had honestly mistaken Rosenmeier for Dill and bore no ill will against Dill. In the present case, Dill presented sufficient evidence to raise a jury question as to whether there was probable cause to believe that the shoplifter was Dill, and it was the jury's role to determine if malice could be inferred from the evidence presented. *See Lane v. Scott*, 220 Va. 578, 582 (1979) ("Where the evidence fairly supports multiple inferences, a trial judge ruling on a motion to strike must adopt those inferences most

12

favorable to the party whose evidence is challenged, even though he may believe different inferences are more probable.").

## B.  False Imprisonment

Dill argues that the circuit court erred in granting Kroger and Lynch's motion to strike her false imprisonment claim because Kroger and Lynch instigated and caused Dill's arrest.  She contends that she presented sufficient evidence for a jury to determine that Kroger acted maliciously in causing her arrest because Harrison reported to the police that Dill perpetrated the two incidents of theft.

Kroger and Lynch respond that a person cannot be falsely imprisoned pursuant to a lawful arrest and highlight that Dill did not contest the lawfulness of her arrest.  They also argue that a third party reporting a crime cannot be responsible for a police officer's subsequent arrest of a suspect, unless the third party ordered the officer to arrest the suspect unlawfully.  We agree with Kroger and Lynch that a person cannot be falsely imprisoned if her liberty was restrained pursuant to a lawful arrest.

To prevail in an action for false imprisonment, a plaintiff must prove that her liberty was restrained, either by words or acts that she would fear to disregard, and that there was no sufficient legal excuse to justify the restraint.  *Montgomery Ward & Co. v. Wickline*, 188 Va. 485, 489 (1948); *Lewis*, 281 Va. at 724.  "False imprisonment is restraint of one's liberty without any sufficient cause therefor[; it is not essential that a person is] confined in jail or in the custody of an officer."  *Zayre of Va., Inc. v. Gowdy*, 207 Va. 47, 50-51 (1966).  "If a person is under a reasonable apprehension that force will be used unless he willingly submits, and he does submit to the extent that he is denied freedom of action, this, in legal contemplation, constitutes false imprisonment."  *Id.* at 51.

13

However, in no case may a person prevail on a claim of false imprisonment if her arrest was lawful. *Lewis*, 281 Va. at 724. "The gist of [false imprisonment] is the illegal detention of the person, without lawful process, or the unlawful execution of lawful process." *Montgomery Ward & Co.*, 188 Va. at 489 (quoting *Kress & Co. v. Roberts*, 143 Va. 71, 75 (1925)). Accordingly, a plaintiff cannot maintain an action for false imprisonment because of an arrest pursuant to a regular and valid warrant; that is, if the imprisonment results from her being "taken in due course to the magistrate and there admitted to bail or imprisoned regularly upon due order of commitment from him." *Lewis*, 281 Va. at 724 (internal quotation marks omitted).

Notably, unlike in an action for malicious prosecution, neither malice nor the lack of probable cause is an element of the tort of false imprisonment. *Montgomery Ward & Co.*, 188 Va. at 489-90; *Zayre of Va. Inc.*, 207 Va. at 51.

In this case, after the warrants were issued, Dill reported to the police department, as instructed by Investigator Green. She was taken before a magistrate who placed her on bond, ordered her to remain in the Commonwealth, and prohibited her from visiting the Kroger store. The circuit court did not err in striking Dill's false imprisonment claim because Dill was detained pursuant to lawful process, which was lawfully executed. Even presuming that there is sufficient evidence in the record for a jury to find that Kroger and Lynch instigated Dill's arrest, there was no evidence to show that Dill was illegally detained without lawful process. Even if the actions of Kroger and Lynch were malicious, and their allegations were not supported by probable cause, Dill's arrest was lawful because it was a consequence of proper legal process. Therefore, the circuit court did not err in granting Kroger and Lynch's motion to strike Dill's false imprisonment claim.

14

III. CONCLUSION

For the foregoing reasons, we hold that the circuit court erred in granting Kroger and Lynch's motion to strike Dill's malicious prosecution claim; it did not err in granting Kroger and Lynch's motion to strike Dill's other claims. We will therefore reverse the judgment of the circuit court, in part, and remand this case to the circuit court for trial proceedings in accordance with this opinion.

*Affirmed in part,*
*reversed in part,*
*and remanded.*