Richmond

# FOULTON ALLEN LEE, III v. SOUTHLAND CORPORATION, t/a, etc.

June 9, 1978

Record No. 761670

Present: All the Justices

*Irving M. Blank (Stephen A. Isaacs; Paul, Smith & Blank,* on brief) for plaintiff in error.

*Lanier Thurmond (Thurmond, Bostwick & Glass,* on brief) for defendant in error.

I'ANSON, C.J., delivered the opinion of the Court.

Plaintiff, Foulton Allen Lee, III, instituted this action against the defendants, Southland Corporation, t/a 7-Eleven Stores, and Cheryl Maynard, an employee of the corporation, to recover compensatory and punitive damages resulting from an alleged malicious prosecution charging plaintiff with unlawfully and wilfully breaking the glass in the entrance door to one of Southland's stores by kicking it with his foot.

The case was tried by a jury and at the conclusion of all the evidence, the trial court struck plaintiff's evidence as to punitive damages, and the damages issue was submitted to the jury restricted to compensatory damages only. The jury returned a verdict for the plaintiff against Southland in the amount of $3,000 and found for the defendant, Cheryl Maynard. Subsequently, the trial court set aside the verdict of the jury against Southland on the ground that there was probable cause as a matter of law for issuing the warrant of arrest and entered final judgments for Southland and Mrs. Maynard.

We granted plaintiff a writ of error to the action of the trial court: (1) in setting aside the jury's verdict against Southland, and in entering judgment for Southland; and (2) in removing from the jury's consideration the question of punitive damages.

Plaintiff's evidence shows that in the mid-afternoon of April 23, 1976, plaintiff went to the 7-Eleven store, which was across the street from his office, to make several purchases. As he left the store with a bag of "Doritos" in one hand and a "Slurpee" in the other, he pushed the door open with his foot and the glass in the door shattered. At that moment, two girls "drove up" in the store's parking lot and the plaintiff asked them if they had seen what happened. While plaintiff was talking with the girls, Donald W. Williams, supervisor for the 7-Eleven stores, arrived on the scene. Mrs. Maynard, the store clerk, told Williams that plaintiff broke the glass. Williams then asked the plaintiff if he was going to pay to replace it. Plaintiff advised him that it was an accident; that he did not think he was responsible for breaking the glass; and that he would be willing to speak with 7-Eleven's insurance agent about the matter. After giving the store's representative his name, home and business addresses, and telephone numbers, plaintiff departed the scene.

Williams testified that if plaintiff had paid the cost of replacing the glass, which was estimated to be between sixty and seventy dollars, a criminal warrant would not have been issued against plaintiff.

Robert L. Sowers, district manager for the 7-Eleven stores, had two conversations with the plaintiff relative to the breaking of the glass and payment for replacing it. When plaintiff continued to maintain that he did not purposely break the glass and that he did not think he was responsible for it, Sowers directed Mrs. Maynard to obtain a warrant against the plaintiff.

The warrant was issued eleven days after the glass was broken. Plaintiff learned of the issuance of the warrant before it was served on him and he talked with Sowers over the telephone. He asked Sowers if it was his intention that Maynard obtain a criminal warrant, and Sowers replied that it was.

Plaintiff was arrested on the warrant charging him with unlawfully and wilfully breaking the glass in the door. He was photographed, booked, fingerprinted, put in a cell, and later

released on bond. Upon plaintiff's trial in the district court, the case was dismissed.

The defendant Maynard testified that plaintiff kicked the glass in the door and shattered it. She said it was her understanding that if plaintiff paid to replace the glass, there would be no warrant issued.

Sowers testified that the reason for directing Mrs. Maynard to have the criminal warrant issued against plaintiff "was to get him to pay for the door."

Malicious prosecution actions are not favored in Virginia and the requirements for maintaining such actions are more stringent than those applying to most other tort claims. The reason for this disfavor is that criminal prosecutions are essential for the maintenance of an orderly society and people should not be discouraged from bringing such actions for fear of subsequent civil proceedings against them. *Niese* v. *Klos,* 216 Va. 701, 703, 222 S.E.2d 798, 800 (1976). But when "'the requirements [limiting such actions] have been met and the proper elements to support the action have been presented, the action will be readily upheld.'" *Bain* v̇. *Phillips,* 217 Va. 387, 393, 228 S.E.2d 576, 581 (1976), quoting *Wiggs* v. *Farmer,* 205 Va. 149, 151, 135 S.E.2d 829, 831 (1964).

For a plaintiff to prevail in a suit for malicious prosecution, he must allege and prove (1) that the prosecution was instituted by, or with the cooperation of, the defendant; (2) that the prosecution was terminated in a manner not unfavorable to the plaintiff; (3) that it was without probable cause; and (4) that it was malicious. *Niese, supra,* 216 Va. at 703, 222 S.E.2d at 800. There is no contention that plaintiff did not meet the first two requirements.

Probable cause in malicious prosecution actions is defined as "knowledge of such a state of facts and circumstances as excite the belief in a reasonable mind, acting on such facts and circumstances, that the plaintiff is guilty of the crime of which he is suspected." *Va. R. & P. Co.* v. *Klaff,* 123 Va. 260, 266, 96 S.E. 244, 246 (1918). *Accord, Bain, supra; Gaut* v. *Pyles,* 212 Va. 39, 41, 181 S.E.2d 645, 647 (1971); *Giant of Virginia* v. *Pigg,* 207 Va. 679, 684, 152 S.E.2d 271, 275 (1967). "The test of probable cause is to be applied as of the time when the action complained of was taken." *Bain, supra,* 217 Va. at 394, 228 S.E.2d at 581.

■ Only where the facts relating to probable cause are not in dispute in a malicious prosecution action does the issue become a question of law for the court; and when such facts are in dispute, the issue is one of fact to be resolved by the triers of fact. *Brodie* v. *Huck,* 187 Va. 485, 488, 47 S.E.2d 310, 312 (1948); *Virginia Elec. & P. Co.* v. *Wynne,* 149 Va. 882, 892, 141 S.E. 829, 833 (1928).

■ In the present case, there was a conflict in the evidence as to whether the plaintiff wilfully kicked and broke the glass door or whether the breaking of the glass was unintentional and accidental. Thus, the issue of existence or non-existence of probable cause for the issuance of the warrant was a factual question for the jury and not a question of law for the court's determination. *Cf. Edwards* v. *Carey,* 219 Va. 90, 244 S.E.2d 767 (1978). Since legal malice may be inferred by the jury from want of probable cause,* we hold that the trial court erred in setting aside the jury's verdict and in entering judgment for Southland.

■ Plaintiff contends that the trial court also erred in withdrawing from the jury's consideration the issue of punitive damages.

In a malicious prosecution action, it is proper to award punitive damages only when actual malice, or malice in fact, has been established by the evidence. Legal malice, which may be inferred from want of probable cause, is not sufficient. Actual malice, or malice in fact, may be established by showing that the prosecutor's action was prompted by ill will, malevolence, grudge, spite, wicked intention, or a conscious disregard of the rights of another. *Pigg, supra,* 207 at 685-86, 152 S.E.2d at 277, and the many cases there cited.

The institution of a criminal prosecution not for the purpose of bringing an offender to justice, but for the primary purpose of using it as a means to collect a debt, is for an improper purpose and therefore malicious. *Rhodes* v. *Roberts,* 223 Miss. 580, 585-86, 78 So.2d 614, 617 (1955); *Peters* v. *Hall,* 263 Wis. 450, 453, 57 N.W.2d 723, 724 (1953); Prosser on Torts, Malicious Prosecution, § 119 at 848 (4th ed., 1971), and the cases there cited; 3 Restatement, Torts 2d, § 668 at 438, and comment "g" (1977).

In the present case, the testimony of all of Southland's witnesses shows that the criminal prosecution was wilfully and purposely set

---

*\*Gaut, supra,* 212 Va. at 42, 181 S.E.2d at 647; *Pigg, supra,* 207 Va. at 685, 152 S.E.2d at 276.

in motion approximately eleven days after the glass was broken. The purpose of the prosecution was not to bring the plaintiff to justice, but was primarily for the purpose of using the criminal process to collect the cost of replacing the broken glass door. Such wilfull and conscious misuse of the criminal process constitutes a reckless disregard of the rights of another and is therefore malicious.

■ Whether an award of punitive damages would be proper in the present case was a question for determination by the jury. *Pigg, supra,* 207 Va. at 685-86, 152 S.E.2d at 276. Thus, we hold that it was error not to instruct the jury on the question of punitive damages.

For the reasons stated, the judgment of the court below as to Southland is set aside, and the verdict of the jury is reinstated. The case is remanded for the entry of a judgment against Southland in accordance with the jury's verdict, and for a new trial on the issue of punitive damages only. *See O'Brien v. Snow,* 215 Va. 403, 406, 210 S.E.2d 165, 168 (1974).

*Reversed and remanded.*