Richmond

ARCHIE PALLAS

V.

STRAVROS ZAHAROPOULOS

January 12, 1979.

Record No. 770822.

Present: All the Justices.

*J. T. Camblos* for plaintiff in error.

*Douglas L. Pierson (Soutzos & Pierson,* on brief), for defendant in error.

COCHRAN, J., delivered the opinion of the Court.

In this malicious prosecution action, a jury trial in the court below resulted in a verdict for the plaintiff, Stavros Zaharopoulos, against the defendant, Archie Pallas, for compensatory damages in the sum of $4,200 and punitive damages in the sum of $800. A motion by Pallas to set aside the verdict was argued in 1974 but no action was taken thereon prior to the death of the trial judge. After the qualification of his successor, the motion was re-argued and overruled by the trial court, which entered judgment on the verdict. We granted Pallas a writ of error limited to the question

whether as a matter of law he had probable cause, based upon advice of counsel, to prosecute Zaharopoulos. As Zaharopoulos has obtained a jury verdict, approved by the trial court, we shall review the evidence in the light most favorable to him.

In October, 1972, Pallas and Zaharopoulos entered into a lease agreement, prepared by Pallas's attorney, Richard S. Callaghan, Jr., and Zaharopoulos's attorney, Nicholas Kapnistos, under which Zaharopoulos leased for the period of one year the business, including the equipment and trade name, known as Archie's Pizza, and the premises on which the business was conducted. The agreement required rental payments of $2,000 per month and a security deposit of $6,000, $4,000 payable at the time the agreement was executed and the balance of $2,000 payable on or before January 15, 1973. The agreement contained no provision for reentry by the lessor upon the lessee's default. Zaharopoulos failed to pay the balance of the security deposit in the sum of $2,000 on or before the time designated in the lease agreement.

There is evidence that in November, 1972, Pallas entered the premises and tried unsuccessfully to have a locksmith change the locks on the doors even though Zaharopoulos was not then in default under the lease. There is also evidence that in early February of 1973, when Zaharopoulos was in default, Pallas went to Archie's Pizza and used insulting and abusive language in demanding payment of Zaharopoulos.

On February 13, 1973, Pallas and his attorney, Callaghan, went to the restaurant to try to persuade Zaharopoulos to vacate the premises. After a few minutes of discussion Zaharopoulos ordered Pallas to leave and Pallas then waited outside the restaurant while Callaghan and Zaharopoulos continued their conversation. Zaharopoulos testified that he assured Callaghan that he would pay the balance of the security deposit, but Callaghan threatened that if he did not that day either pay or surrender the property Callaghan would have him put in jail. Using a telephone at the restaurant, Callaghan sent for a locksmith who came to change the locks, but this effort was frustrated by a police officer called by Zaharopoulos.

As the discussion continued, Zaharopoulos telephoned his attorney, Kapnistos, and both he and Callaghan talked to Kapnistos. During the conversation there was discussion of an adding machine and toaster, which Pallas maintained were missing from the restaurant. Kapnistos testified that Zaharopoulos told him that the adding machine was at Zaharopoulos's house and the toaster was

defective and was being repaired. Callaghan testified that Pallas came back into the restaurant and listened as Zaharopoulos conversed with Kapnistos in a foreign language which Callaghan presumed to be Greek, and that Pallas, translating Zaharopoulos's part of the conversation for Callaghan, quoted Zaharopoulos as saying that he had the adding machine in his possession and would not return it. Callaghan warned Kapnistos that Zaharopoulos would be arrested if he did not vacate the premises. At the conclusion of the telephone conversation, Callaghan telephoned a justice of the peace, who also told Zaharopoulos that he must leave the premises or go to jail. When Zaharopoulos refused to capitulate, Callaghan and Pallas departed.

Before taking further action, Callaghan discussed the matter with John A. Dezio, Assistant Commonwealth's Attorney, who suggested that Zaharopoulos might be guilty of criminal trespass as well as larceny. Accordingly, Callaghan advised Pallas that he could swear out warrants for trespass and larceny, and Pallas did so. Callaghan was present at Archie's Pizza the same afternoon when Zaharopoulos was arrested on the trespass warrant. Subsequently, Zaharopoulos was charged with grand larceny. In General District Court, he was acquitted of trespass and convicted of petty larceny; on appeal, the larceny charge also was dismissed. Zaharopoulos then instituted this action for malicious prosecution against Pallas based upon the warrants which Pallas had sworn out against him.

At the conclusion of plaintiff's evidence, the trial court sustained defendant's motion to strike the evidence as it related to the larceny warrant. However, the court refused to strike the evidence insofar as the charge related to the warrant for criminal trespass. When the motion was renewed after all the evidence had been taken, the trial judge, characterizing plaintiff's evidence as "exceedingly weak", nevertheless decided with obvious misgivings to let the case go to the jury and overruled the motion to strike.

Malicious prosecution actions are not favored in Virginia. To maintain such an action, a plaintiff must allege and prove (1) that the prosecution was set on foot by the defendant and that it terminated in a manner not unfavorable to the plaintiff; (2) that it was instituted, or procured by the cooperation of, the defendant; (3) that it was without probable cause; and (4) that it was malicious. *Bain* v. *Phillips*, 217 Va. 387, 393, 228 S.E.2d 576, 581 (1976); *Niese* v. *Klos*, 216 Va. 701, 703, 222 S.E.2d 798, 800 (1976).

When a defendant, in initiating a prosecution, acts in good faith upon the advice of reputable counsel, after a full disclosure of all material facts, he has probable cause to support his action. Probable cause serves as a complete defense to an action for malicious prosecution, even if the advice given by the attorney is wrong. *Bain* v. *Phillips, supra*, 217 Va. at 394, 228 S.E.2d at 581; *Spitzer* v. *Clatterbuck*, 202 Va. 1001, 1004, 121 S.E.2d 466, 468 (1961). The defendant must prove that he sought advice of counsel with an honest purpose of being informed of the law, that he made a full, correct and honest disclosure of all material facts known to him or which he should reasonably have known, and that he acted in good faith guided by the advice given by counsel. *Noell* v. *Angle*, 217 Va. 656, 660, 231 S.E.2d 330, 333 (1977). This defense usually presents a jury question unless reasonable minds cannot differ that advice of counsel has been established. *Id.* at 661, 231 S.E.2d at 333.

There is ample evidence from which the jury reasonably could have found that Pallas acted with malice in attempting to remove Zaharopoulos from the restaurant and repossess the premises. Malice could be inferred from the unsuccessful attempt by Pallas to change the locks on the building in November, the threatening and insulting language used by Pallas in demanding that Zaharopoulos pay the balance of the security deposit, and Pallas's erroneous translation for Callaghan of Zaharopoulos's telephone conversation with his attorney. However, conceding the existence of malice, we are here concerned not with malice but with lack of probable cause. Although malice may be inferred from lack of probable cause, lack of probable cause may not be inferred from malice. *Bill Edwards Oldsmobile, Inc.* v. *Carey*, 219 Va. 90, 100, 244 S.E.2d 767, 773 (1978).

It was stipulated by the parties that Callaghan was a reputable attorney. The uncontradicted evidence shows that, although he represented Pallas in the preparation of the lease agreement for Archie's Pizza and in the controversy that arose concerning the lease, Callaghan was personally acquainted with Zaharopoulos and, indeed, had represented him in an automobile accident claim in the autumn of 1972. Thus, in approaching Zaharopoulos in an effort to effect an amicable disposition of the controversy, Callaghan did not come as a stranger.

Zaharopoulos says that the evidence shows that Pallas did not seek advice of counsel to be informed of the law but to cause the wrongful eviction of Zaharopoulos. We disagree. Pallas and Callaghan agreed that Pallas consulted his attorney to find out how he

could regain possession of his restaurant from his defaulting tenant. It is apparent that this advice was sought in order to determine how the desired result could legally be accomplished. Callaghan acknowledged that in advising Pallas to swear out the warrant, it was his purpose not only to see that justice was done, if a crime had been committed, but also to see that his client regained possession of his property. Realistically, we may assume that Callaghan's duty to serve his client was his primary motivation, but even if this were his sole motivation, there is no evidence that Pallas was so foolish or improvident as to attempt to induce his attorney to furnish incorrect or improper legal advice. On the record before us, such a contention is untenable.

We find no merit in Zaharopoulos's argument that the defense of advice of counsel presented a jury issue because, he maintains, there is evidence that Pallas did not make a full and fair disclosure to Callaghan of all material facts. The only facts which were not disclosed to Callaghan were the unreported November attempt by Pallas to change the locks, the abusive and insulting language used by Pallas, and what could have been inferred as his deliberate misrepresentation of the purport of the telephone conversation between Zaharopoulos and his attorney. None of these facts was material, however, to the issuance of the trespass warrant. Pallas reported to Callaghan on February 13, 1973, the material and uncontroverted fact that Zaharopoulos was still in default in making payments under the lease. Callaghan was familiar with the terms of the lease, for he had participated in its preparation, although he was of the erroneous opinion that Zaharopoulos's admitted default made the tenant a trespasser in possession of the leased premises. After conferring with the Assistant Commonwealth's Attorney, Callaghan incorrectly advised Pallas that a criminal warrant for trespass would lie against Zaharopoulos. The evidence discloses no other material facts that were relevant to the advice given by Callaghan.

Finally, we reject Zaharopoulos's argument that the evidence created a jury issue as to Pallas's good faith in following the advice of his attorney. The evidence is conclusive that Callaghan not only furnished the incorrect advice but supervised Pallas's actions taken pursuant thereto. The meeting with Zaharopoulos on February 13 was conducted by Callaghan rather than Pallas, Callaghan taking over the discussion with Zaharopoulos after Pallas had, at the tenant's insistence, absented himself. Callaghan was the only lawyer present; Callaghan was the one who called the locksmith to

change the locks; Callaghan was the one who told Zaharopoulos's attorney in the telephone conversation that Zaharopoulos must immediately surrender the property to avoid being arrested; Callaghan consulted the Assistant Commonwealth's Attorney; and Callaghan arranged with the justice of the peace for Pallas to swear out the warrant. Pallas testified that he relied entirely upon Callaghan's guidance, and the record is devoid of any evidence to the contrary. Indeed, the evidence shows that Callaghan personally saw to it that his advice was promptly implemented by action.

Zaharopoulos attaches significance to the evidence of "bad blood" between the landlord and his tenant, and of the "ulterior" motive of Pallas in swearing out the warrant. We agree that there is evidence of animosity between the parties and of a strong desire on the part of Pallas to regain possession of his property. However, good faith in seeking and following the advice of counsel is not determined by a client's motives. Good faith in this context does not mean that a landlord, in dealing with his defaulting tenant, must exhibit kindness and consideration, or that his conduct must be exemplary, untainted by malice, and prompted by a desire to bring to justice a violator of the criminal laws. Rather, it means that a landlord must deal honestly with his own attorney in an effort to ascertain the legal options available to resolve a controversy, and, having received legal advice based upon all material facts, that he not deviate from a recommended course of action. If the client meets these requirements, his motives are irrelevant.

The record shows conclusively that the defense of advice of counsel was established by Pallas as a matter of law. The jury may have erroneously believed that Pallas, having acted with malice in prosecuting Zaharopoulos, was thereby precluded from establishing a defense of advice of counsel predicated upon good faith in seeking and following his attorney's advice. In a malicious prosecution case, however, the determination of malice is based upon the defendant's entire course of conduct toward the plaintiff; the determination of good faith is based solely upon the defendant's candor in consulting his own attorney and his adherence to the attorney's advice. So the two concepts, malice and good faith, are not mutually exclusive in such a case. Absent a misconception on the part of the jury, we believe that reasonable men could not differ in the conclusion that Pallas acted entirely upon the advice of counsel. We hold, therefore, that the trial court erred in overruling the defendant's motion to strike the plaintiff's evidence, made after all the evidence had been taken, and in overruling the

motion to set aside the verdict for plaintiff and entering judgment for defendant.

Accordingly, we will reverse the final judgment of the trial court and enter judgment here for Pallas.

*Reversed and final judgment.*