Present: All the Justices

JAMES P. O'CONNOR, ET AL.

v.  Record No. 091941

JAMES C. TICE

OPINION BY
JUSTICE LAWRENCE L. KOONTZ, JR.
January 13, 2011

FROM THE CIRCUIT COURT OF NORTHUMBERLAND COUNTY
E. Preston Grissom, Jr., Judge

In this appeal of a judgment entered in favor of the plaintiff in a malicious prosecution action, we consider whether the evidence was sufficient to support the jury's verdict.  In doing so, we focus on whether the defendants initiated a criminal prosecution against the plaintiff without probable cause.

BACKGROUND

In 2006, James P. O'Connor and Vickie L. O'Connor, through their closely-held limited liability company Viocon Enterprises, LLC (collectively "the O'Connors"), purchased a commercial building in Lottsburg.  In April of that year, the O'Connors began renovating the building in anticipation of opening a restaurant and housing Mr. O'Connor's surveying business.  Following two unsuccessful attempts to hire a suitable painter, the O'Connors hired James C. Tice's business, T & N Painting, to paint the exterior of their building for $6,872.

After receiving a one-third advance of $2,290.67, Tice was supposed to start work on June 5, 2006. However, because of rain, Tice and his crew did not begin working until June 6, 2006. It rained off and on during the time they were on the job. At one point, the flat roof on the right side of the building sustained storm damage. Because Tice and his crew had to stand on that roof to paint a portion of the second story of the building, repairs to the roof prevented them from working for a few days. When the repairs to the roof were complete, Tice's employees resumed their work and placed down "walk boards," drop cloths and tarps, and wore soft-soled tennis shoes while working from the roof. According to Tice, the roof was in "perfect shape" the last time they worked on the building.

On June 19, 2006, Mrs. O'Connor discovered "gouges and footprints in the new roof." The next day, Mr. O'Connor called Tice and left a message for him to stop work immediately and not to come back to the job because Tice had damaged the roof. A few days later, when Tice and Mr. O'Connor talked on the telephone, Tice denied Mr. O'Connor's accusation that he had damaged the roof. In an effort to "calm [Mr. O'Connor] down," Tice proposed that since he had performed more than one-third of the work, he would keep his advance and they would "part amicably." According to Tice,

2

Mr. O'Connor replied "fine" and hung up. The O'Connors testified that they did not agree to those terms. According to them, Tice denied damaging the roof and told Mr. O'Connor that he was keeping his deposit and quitting the job.

Due to weather and roof repair delays, Tice and his crew were only able to work on the building for five days in a two-week span. During that time, Tice bought materials for the job, including paint remover, sanding pads, and primer. Tice and his crew used these materials to strip, sand, and prime the building for painting. In total, Tice estimated that he completed 75% of the "prep work," which was 60-65% of the entire job. Mrs. O'Connor, on the other hand, testified that Tice completed roughly 20% of the job. And Mr. O'Connor testified that Tice only finished about 5% of the job.

On September 29, 2006, the O'Connors filed a warrant in debt against Tice in the Lancaster County General District Court seeking to recover their deposit and money for damage done to the roof. The O'Connors, however, listed the wrong address for Tice on the warrant in debt. When the case subsequently was dismissed for no service, the presiding judge recommended that the O'Connors go to the Lancaster County Sheriff's Office to obtain Tice's correct address. The O'Connors went there and were told that because their building was located in Northumberland County they should go to the

Northumberland County Sheriff's Office to obtain Tice's address.

At the Northumberland County Sheriff's Office, the O'Connors asked to "speak to someone about serving a warrant in debt or getting an address." They were introduced to Sheriff's Deputy Anthony Darby. The O'Connors gave Darby their "whole packet," which included Tice's written estimate, photographs of the work done, the warrant in debt, a timeline of their recollection of the work performed each day, and Tice's business card. The O'Connors explained that they had paid Tice a partial amount for an unfinished job, but they never discussed with Darby that Tice had completed a portion of that job. Based on the information presented to him, Darby told the O'Connors that it looked like Tice may have committed construction fraud. Darby then told them that he would find Tice's correct address and that if they wished to pursue a criminal prosecution for construction fraud they needed to send a certified letter to Tice demanding return of the deposit within 15 days of receipt as required by the construction fraud statute. See Code § 18.2-200.1.

On October 19, 2006, the O'Connors sent the "15-day letter" to Tice, informing him that they attempted to serve a warrant in debt against him, but were unsuccessful because the address they had for him did not exist. The letter further

4

demanded that he return the $2,290.67 deposit and pay an additional $1000 for roof damage and $55 for court costs. The letter then provided, "If we do not receive the debt of $3,345.67 within 15 days of this letter we will file a criminal complaint for construction fraud in Northumberland County."

Upon receiving the letter, Tice took it to his attorney, Paul Christian Stamm, Jr. Stamm called Mr. O'Connor and informed him that Tice had received the letter. Stamm gave Mr. O'Connor Tice's correct address and told him that Tice could be served with a warrant in debt at that address or at Stamm's office. Stamm then sent a letter to the O'Connors on November 3, 2006, which also informed them of Tice's correct address and explained that a warrant in debt could be served at that address or at Stamm's office. In the letter, Stamm wrote, "[i]t appears to me that this is a civil matter and not a criminal matter."

The O'Connors turned over their certified letter, the mail receipt, and their materials to Darby at the end of the 15-day period without telling Darby of Mr. Connor's phone conversation with Stamm or about Stamm's letter. Darby, who testified that he would not have sought criminal charges against Tice if the O'Connors had not come back to him after the 15-day period, took their information to then-

5

Commonwealth's Attorney R. Michael McKenney to see if there was enough information to obtain a warrant. McKenney concluded that the information presented to him constituted probable cause to believe that Tice had committed construction fraud.

Darby then presented to the magistrate the information the O'Connors had provided him. On November 21, 2006, the magistrate issued a warrant for Tice's arrest, charging him with construction fraud in violation of Code § 18.2-200.1. Tice was arrested the next day.

On January 22, 2007, a preliminary hearing on the criminal warrant was held in the Northumberland County General District Court. At the end of the Commonwealth's case-in-chief, Tice's counsel moved to strike the evidence. The judge granted the motion and dismissed the case for lack of probable cause.

On January 23, 2008, Tice filed in the Circuit Court of Northumberland County a malicious prosecution action against the O'Connors and Darby. Darby settled with Tice prior to trial and was dismissed from the case.

The case proceeded to trial against the O'Connors with the jury returning a verdict for Tice in the amount of

6

$200,000 in compensatory damages.[1]  Thereafter, the O'Connors made a motion for judgment notwithstanding the jury's verdict on the grounds that as a matter of law they had probable cause to believe that Tice committed construction fraud, and additionally that there was insufficient evidence that they initiated the prosecution of Tice.  Following a hearing, the circuit court denied the motion, finding that the facts with respect to these issues were in dispute and were therefore questions for the jury.  We awarded the O'Connors this appeal.

DISCUSSION

Malicious prosecution actions arising from criminal proceedings are not favored in Virginia and the requirements for maintaining such actions are more stringent than those applied to other tort cases.  Reilly v. Shepherd, 273 Va. 728, 733, 643 S.E.2d 216, 218 (2007); Ayyildiz v. Kidd, 220 Va. 1080, 1082, 266 S.E.2d 108, 110 (1980); Lee v. Southland Corp., 219 Va. 23, 26, 244 S.E.2d 756, 758 (1978).  The reason for this disfavor is that criminal prosecutions are essential for maintaining an orderly society and people should not be discouraged from bringing such actions out of fear of subsequent civil proceedings against them.  Reilly, 273 Va. at

---

[1] The O'Connors made a post-trial motion pursuant to Code § 8.01-35.1 for the circuit court to reduce the jury's verdict by $15,000, the amount for which Darby settled with Tice before trial.  The court granted this motion and entered judgment against the O'Connors in the amount of $185,000.

733, 643 S.E.2d at 218-19; Ayyildiz, 220 Va. at 1082-83, 266 S.E.2d at 110-11; Lee, 219 Va. at 26, 244 S.E.2d at 758.

To prevail in a malicious prosecution action, Tice had to prove by a preponderance of the evidence that the prosecution was (1) malicious, (2) instituted by or with the cooperation of the O'Connors, (3) without probable cause, and (4) terminated in a manner not unfavorable to him. Reilly, 273 Va. at 732, 643 S.E.2d at 218; Baker v. Elmendorf, 271 Va. 474, 476, 628 S.E.2d 358, 359 (2006). The first and fourth of these elements are not at issue in this appeal. Rather, the O'Connors contend that the evidence was insufficient as a matter of law for the jury to find that probable cause to believe that Tice committed construction fraud did not exist at the time the criminal warrant was issued. The O'Connors further contend that the evidence was insufficient as a matter of law for the jury to find that the O'Connors initiated the prosecution of Tice. As a threshold matter, we will address this latter contention first.

The O'Connors assert that they merely assisted and cooperated with law enforcement in the investigation of Tice for construction fraud. They maintain that it was Darby who first "raised the specter" of construction fraud, it was Darby who advised them to write the 15-day letter to Tice, and it was Darby who after receiving the 15-day letter return receipt

8

took control of the criminal prosecution by seeking the advice of McKenney and obtaining the issuance of the criminal warrant. The O'Connors assert that their only involvement was reporting suspected wrongdoing and appearing as witnesses at Tice's preliminary hearing. They argue that this type of involvement cannot constitute "initiating" a criminal prosecution as a matter of law.

Tice acknowledges that Darby may have "initially raised the specter of a criminal charge for construction fraud against Tice," but the O'Connors were the ones who executed the 15-day letter containing a clear warning that they would file "a criminal complaint for construction fraud" if Tice failed to comply. Tice points out that after the 15-day period had expired, the O'Connors, despite having Tice's correct address to serve a warrant in debt, decided instead to turn over their information to Darby with the understanding he would seek criminal charges against Tice. Moreover, Darby testified that he would not have sought criminal charges against Tice if the O'Connors had not come back to him after the 15-day period. Tice argues that these circumstances clearly show that the O'Connors initiated the prosecution of Tice. We agree.

By writing the 15-day letter, warning Tice of criminal consequences should he fail to pay them the money they had

sought by their warrant in debt, the O'Connors clearly availed themselves of a criminal process in order to collect a civil debt. See Lee, 219 Va. at 27, 244 S.E.2d at 759 ("The institution of a criminal prosecution not for the purpose of bringing an offender to justice, but for the primary purpose of using it as a means to collect a debt, is for an improper purpose and therefore malicious.") We find no merit to the O'Connors' contention that they were "merely" cooperating in a criminal investigation. They unmistakably authorized Darby to proceed criminally against Tice, providing him with all the information used to obtain the issuance of the criminal warrant. We therefore hold that the evidence was sufficient for the jury to find that the O'Connors initiated the prosecution of Tice.

Turning now to the issue of probable cause, in the context of a malicious prosecution action, probable cause is defined as knowledge of such facts and circumstances to raise the belief in a reasonable mind, acting on those facts and circumstances, that the plaintiff is guilty of the crime of which he is suspected. Reilly, 273 Va. at 733, 643 S.E.2d at 219; Commissary Concepts Mgmt. Corp. v. Mziguir, 267 Va. 586, 589-90, 594 S.E.2d 915, 917 (2004); Stanley v. Webber, 260 Va. 90, 95-96, 531 S.E.2d 311, 314 (2000). Whether probable cause existed is determined at the time the defendant took the

action initiating the criminal charges.  Reilly, 273 Va. at 733, 643 S.E.2d at 219; Mziguir, 267 Va. at 590, 594 S.E.2d at 917; Stanley, 260 Va. at 96, 531 S.E.2d at 314-15.  When the facts relating to the question of probable cause are in dispute, the issue is one of fact to be resolved by the trier of fact.  Stanley, 260 Va. at 96, 531 S.E.2d at 315; Lee, 219 Va. at 27, 244 S.E.2d at 759; Brodie v. Huck, 187 Va. 485, 488, 47 S.E.2d 310, 312 (1948).

To be guilty of construction fraud, the defendant must have the intent to defraud at the time the advance of money is received.  See Bottoms v. Commonwealth, 281 Va. ___, ___, ___ S.E.2d ___, ___ (2011) (this day decided).  As evidence of probable cause to believe that Tice committed construction fraud as a matter of law, the O'Connors point to "three separate law enforcement officials" – McKenney, the magistrate, and Elizabeth A. Trible, the Assistant Commonwealth Attorney assigned to prosecute the case – who independently concluded that probable cause existed.  Additionally, since McKenney made the decision to prosecute Tice, and Darby, acting on the advice of McKenney, obtained the issuance of the criminal warrant, the O'Connors argue that this Court must find that probable cause to initiate the prosecution existed as a matter of law.

11

The determinations of probable cause by McKenney and the magistrate were based exclusively on the information Darby received from the O'Connors.[2]  In attempting to rely on these determinations as evidence of probable cause as a matter of law, the O'Connors seem to suggest an "advice of counsel defense."  That defense is not applicable in this case since the O'Connors only spoke to Darby, and McKenney was not acting as the O'Connors' attorney when he made his determination of probable cause.  Even if the defense were available, it would not have been established in this case as a matter of law.

We have said the following about the advice of counsel defense in malicious prosecution actions:

> "[W]hen a defendant, in initiating a prosecution, acts in good faith upon the advice of reputable counsel, after a full disclosure of all material facts, he has probable cause to support his action. Probable cause serves as a complete defense to an action for malicious prosecution, even if the advice given by the attorney is wrong.  The defendant must prove that he sought advice of counsel with an honest purpose of being informed of the law, that he made a full, correct and honest disclosure of all material facts known to him or which he should reasonably have known, and that he acted in good faith guided by the advice given by counsel.  This

_____

[2] We will not consider the O'Connors' attempt to rely on the determinations made by Trible.  The jury was properly instructed that it "shall consider the facts and circumstances as they appeared to the defendants at the time the criminal proceedings were instituted by the issuance of the criminal warrant."  Thus, any determinations following the issuance of the warrant were not relevant to whether the O'Connors had probable cause to believe that Tice committed construction fraud.

> defense usually presents a jury question unless reasonable minds cannot differ that advice of counsel has been established."

Andrews v. Ring, 266 Va. 311, 322, 585 S.E.2d 780, 786 (2003) (quoting Pallas v. Zaharopoulos, 219 Va. 751, 755, 250 S.E.2d 357, 359-60 (1979)) (emphasis added).  Here, the O'Connors never informed Darby that they had been in contact with Tice's attorney prior to the issuance of the criminal warrant and that this attorney had suggested to them that the dispute was civil in nature.  The O'Connors also never discussed with Darby that Tice had completed a portion of the job.  Thus, we cannot say that the O'Connors would have established an advice of counsel defense as a matter of law because reasonable minds could differ on whether they "made a full, correct and honest disclosure of all material facts."

Having concluded that the O'Connors initiated the criminal prosecution of Tice, the issue remains whether the O'Connors had probable cause to initiate the prosecution.  Unlike the cases relied upon by the O'Connors on brief, the evidence in the present case was in dispute as to whether the O'Connors had probable cause to believe that Tice committed construction fraud.  See Bill Edwards Oldsmobile, Inc. v. Carey, 219 Va. 90, 99, 244 S.E.2d 767, 773 (1978); American Ry. Express Co. v. Stephens, 148 Va. 1, 17-19, 138 S.E. 496, 501-02 (1927).  Tice testified that since the parties could

13

not agree on who damaged the O'Connors' roof, and because Tice had performed more than one-third of the work on the contract, Mr. O'Connor agreed with Tice's proposal to keep his deposit and leave the job. Conversely, the O'Connors testified that Tice quit the job after performing very little of the work.

The jury could reasonably infer from this conflicting testimony that Tice intended to fulfill his contract obligations and that the "knowledge of such facts and circumstances" by the O'Connors did not "raise the belief in a reasonable mind" that Tice defrauded them. We therefore hold that the evidence was sufficient for the jury to find that the O'Connors did not have probable cause to believe that Tice committed construction fraud.

CONCLUSION

For these reasons, we hold that the evidence was sufficient to support the jury's determination that the O'Connors initiated a criminal prosecution against Tice without probable cause. Accordingly, the judgment of the circuit court will be affirmed.

Affirmed.