# CIRCUIT COURT OF THE CITY OF RICHMOND

Brenda J. Jones

v.

Gary Scott Edwards

January 28, 2011

Case No. CL09-2202

By Judge Melvin R. Hughes, Jr.

In this case upon a jury trial on a claim of malicious prosecution brought by plaintiff against the defendant, a Chesterfield County police officer, the jury found the defendant liable and assessed $250,000.00 in damages.

The evidence established that plaintiff was arrested on four criminal warrants charging forgery and uttering and larceny involving two checks in Richmond after the defendant, Gary Edwards, who investigated the theft of the checks in Chesterfield County, faxed an incident report of his investigation to the City of Richmond police. Upon receipt of the report, a Richmond detective secured the warrants for plaintiff's arrest in Richmond.

After the verdict, the court took under advisement defendant's post trial motions to set aside the verdict as contrary to law and the evidence subject to the receipt of the parties' briefs in support and in opposition to the motions. Upon consideration, the court decides to grant the motions and enter judgment for the defendant as a matter of law. In detail, the salient facts as revealed by the evidence are as follows.

On April 8, 2005, Officer Cerullo of the Chesterfield Police Department created a report based on Susan Haynes' reported theft of blank checks from her home in Chesterfield. The report contained Haynes' bank account number from Bank of America and the two check amounts allegedly drawn from her account using the stolen checks in the amounts of

$43.09 and $119.26. The theft occurred prior to April 4, 2005, the date the checks were deposited. On April 9, 2005, Sergeant Timothy Smith assigned defendant, Gary Scott Edwards, then a Chesterfield County fraud detective, to investigate the theft of the checks, which constituted the crime of larceny.

Beginning his investigation, Edwards contacted Target, a department store in Richmond, where the checks were reportedly presented. He spoke with Gregory W. Anderson, Target's executive team leader of Assets Protection. He explained that he was investigating the theft of checks in Chesterfield County which appeared to have been presented at the Target store. Edwards then gave Anderson the check amounts and date range derived from Officer Cerullo's report. With this information, Anderson checked Target's database and discovered two checks matching the amounts in the time frame, one for $43.09 from March 26, 2005, the other for $119.26 from April 4, 2005. After obtaining these transaction reports, Anderson then reviewed the video camera footage for these transactions and captured the best possible photo still images depicting the purchaser's face. The pictures depict two different African-American women. He then contacted Edwards, who came by the store to pick up the transaction reports and pictures. Edwards did not review the source video recordings.

From this, information about the checks presented to Target was derived, including the driver's license numbers presented by the purchaser and, in one instance, the MICR numbers, located on the bottom of one of the checks, consisting of the routing and account numbers. For the March 26 check, Target's research provided a driver's license number, which identified plaintiff, and the MICR number of the check presented. For the April 4 check, the MICR number was not properly scanned, and the check was associated with two identification numbers. Edwards did not compare Haynes' MICR account number with those associated with the checks presented to Target. Additionally, there was a third check in the amount of $43.09, discovered later, which was one of Haynes' stolen checks. Target incorrectly keyed the amount of this check as $23.09, without Anderson's or Edwards' knowledge as of April 25, 2005. By coincidence, plaintiff wrote a check to Target for $43.09 on March 26, 2005, the same amount as one of the missing-stolen checks. Edwards also testified that at that time he did not believe the photo stills depicted two different people and that this was irrelevant to his investigation of the theft.

After Edwards obtained the pictures and transaction reports from Target, he ran the identification numbers Target provided and pulled up plaintiff's name and Grove Avenue address from records of the Department of Motor Vehicles. He also found that plaintiff had a criminal history involving three misdemeanor convictions and one felony conviction.

Later, Edwards spoke with Haynes and discovered that no African-American female had access to her home to take the missing checks. She indicated that Frank Johnson, a contractor, along with Darryl Jones, had

access to her home around the time of the theft. Edwards then contacted Johnson and showed him the Target pictures, whereupon Johnson indicated that the pictures depicted the wife of Darryl Jones, his employee and neighbor from across the street on Cronin Avenue. Edwards never inquired as to the first name of Darryl Jones' wife. Edwards testified that as his investigation focused on the theft, he could rule out any black females as suspects based on Haynes' account of who had access to her home. He further testified that based on this reasoning he felt no need to further investigate plaintiff, Brenda Jones.

With the foregoing information, on April 25, 2005, Edwards created his investigation report, marked "completed," and faxed a copy to Detective Durham of the City of Richmond Police Department, the police agency responsible for investigating the forgery and uttering crimes in the City of Richmond. In the report, Edwards identified the victim, as well as plaintiff, who was referred to as "Lead/Offender," for whom he provided both her Grove Avenue and the Cronin Avenue addresses. Edwards testified that he provided all of this information believing it to be relevant to the City's investigation. In his testimony, Edwards acknowledged that he listed two different addresses in his report for plaintiff under the belief that he did not know which belonged to her, even though Johnson indicated that the wife of Darryl Jones lived on Cronin Avenue. Edwards stated he included Officer Cerullo's original report but did not include the Target transaction records because he believed Detective Durham would obtain those himself. There is no evidence that Durham ever did this.

Based on this information, Edwards encouraged Haynes to obtain warrants against Darryl Jones. When this did not occur, Edwards swore out warrants himself for Jones for the larceny charges. Ultimately, Darryl Jones pleaded guilty in Chesterfield to the check theft charges.

On April 26, 2005, at 9:40 a.m., the morning after receiving Edwards' report, Detective Durham obtained warrants for the charges of forgery, uttering, and larceny of checks against plaintiff, Brenda Jones, based on Edwards' report. Anderson testified that he spoke with Detective Durham on the phone once about the matter, but he was not clear about when this conversation took place. The evidence does not disclose any other action by Detective Durham, who did not testify, that would comprise an investigation separate from that of Detective Edwards.

In March 2007, Plaintiff, Brenda Jones, received a letter from the City of Richmond requesting her presence at police headquarters. Without any indication as to the purpose of the letter and to avoid the consequence indicated therein of the police coming to her home or office, she and her husband went to the police precinct on March 12, 2007. Upon presenting her identification, Jones was arrested on the warrants obtained by Detective Durham. Released on bond by the magistrate, she appeared the next day for arraignment on March 13, 2007. She engaged counsel for her defense,

paying $3,500.00 in legal fees. Eventually, the Commonwealth moved to *nolle prosequi* the charges against her, and the record of her arrest was expunged. She was never charged with any crimes in Chesterfield County. She testified that no one contacted her in the two-year period between Edwards' investigation and her arrival at the Richmond City police department regarding her March 2005 check, which she issued at Target for her purchase of personal care items and which cleared her bank without any problem.

As a result of these events, plaintiff and her husband testified that she was very upset and cried extensively over the incident. She testified about her worry that her identity had been stolen, and she described the process she went through to freeze her accounts and reissue checks to protect herself from further risk, although she suffered no credit problems or any suspicious activity with her accounts between 2005 and 2007. She had no contact with Edwards and did not know him prior to these events. Although she had to use vacation time to deal with the criminal case, she received no adverse treatment from her employer. She stated she was caused to have her blood pressure medication increased following her March 2007 arrest.

The salient and dispositive issues are whether the evidence established that Edwards cooperated actively in the institution of criminal proceedings against plaintiff and whether lack of probable cause gives rise to a proper inference of malice as a matter of law.

To support the tort of malicious prosecution, the law requires proof that the prosecution was malicious, instituted by or with cooperation of the defendant, without probable cause, and terminated in a manner not unfavorable to the plaintiff. *Andrews v. Ring*, 266 Va. 311, 585 S.E.2d 780 (2003).

Recently, the Supreme Court of Virginia has reiterated the law relating to claims of malicious prosecution.

> Malicious prosecution actions arising from criminal proceedings are not favored in Virginia and the requirements for maintaining such actions are more stringent than those applied to other tort cases. *Reilly v. Shepherd*, 273 Va. 728, 733, 643 S.E.2d 216, 218 (2007); *Ayyildiz v. Kidd*, 220 Va. 1080, 1082, 266 S.E.2d 108, 110 (1980); *Lee v. Southland Corp.*, 219 Va. 23, 26, 244 S.E.2d 756, 758 (1978). The reasons for this disfavor is that criminal prosecutions are essential for maintaining an orderly society and people should not be discouraged from bringing such actions out of fear of subsequent civil proceedings against them. *Reilly [v. Shepherd]*, 273 Va. at 733, 643 S.E.2d at 218-19; *Ayyildiz [v. Kidd]*, 220 Va. at 1082-83, 266 S.E.2d at 110-11 (1980); *Lee [v. Southland Corp.]*, 219 Va. at 26, 244 S.E.2d at 758.

*O'Connor v. Tice*, 281 Va. 1, 7 (2011).

However, even though subject to more stringent requirements than other tort claims, malicious prosecution claims are sustainable if the requirements are met and the proper elements to support the claims are presented. *Bain v. Phillips*, 217 Va. 387, 393, 228 S.E.2d 576, 581 (1976), quoting *Wiggs v. Farmer*, 205 Va. 149, 151, 135 S.E.2d 829, 831 (1964). A stringent approach requires that the evidence be examined more closely to avoid discouraging bringing to justice those who violate the law.

As to a prosecution resulting from a referral among police agencies, as here, the only reported Virginia case on the subject is *Peterbridge v. Bell*, 146 Va. 822, 142 S.E. 348 (1926). There, the court reversed the trial court's ruling denying a motion to set aside a verdict for plaintiff holding that the evidence did not show active cooperation by a defendant police officer who had provided information to another police agency which in turn obtained warrants for plaintiff's arrest. Here, the evidence of Edward's cooperation in plaintiff's arrest was his fax of his report to Detective Durham of Richmond, who in turn obtained the warrants for plaintiff's arrest.

It has been held that in malicious prosecution claims, the element of malice may be inferred from a lack of probable cause. *Pallas v. Zaharopoulos*, 219 Va. 751, 250 S.E.2d 357 (1978). In *Pallas*, confining its analysis for reversing a verdict in plaintiff's favor to the issue of probable cause based on advice of counsel, the court recited a series of actions by the defendant that would support a finding that the defendant otherwise acted with malice, but found probable cause, on the advice of counsel, was present and thus plaintiff could not prevail. The court observed that "[i]n a malicious prosecution case . . . the determination of malice is based upon the defendant's entire course of conduct." *Id.* at Va.757. Here, the evidence supports the absence of probable cause that plaintiff committed the crimes of forgery and uttering because there was no showing that plaintiff's check to Target was tied to the missing-stolen checks. Edwards' report to the Richmond police did not indicate that plaintiff wrote a check using the victim Haynes' checking account number. Thus, in the absence of probable cause, malice may be inferred. This permissible inference of malice is legal malice, which would be sufficient to support a claim for compensatory damages. *Oxenham v. Johnson*, 241 Va. 281, 402 S.E.2d 1 (1991). See *Tweedy v. J. C. Penney Co.*, 216 Va. 596, 221 S.E.2d 152 (1976). Actual malice, on the other hand, sufficient for punitive damages would be shown by a prosecution motivated by spite, ill will, etc. *Lee v. Southland*, 219 Va. 23, 244 S.E.2d 756 (1978). However, in view of his role as a police officer investigating crime, the evidence does not ascribe to him any other course of conduct than the fax transmittal that would otherwise constitute malicious intent. This is in contrast to *O'Connor* where the Court found, consistent with its holding in *Lee v. Southland Corp.*, 219 Va. 23, 244 S.E.2d

756 (1978), that instituting a criminal prosecution, not for the purpose of bringing an offender to justice but for the primary purpose of collecting a debt, is, itself, malicious. *O'Connor v. Tice, supra.* The *O'Connor* Court did find a course of conduct by the defendants for reasons discussed *infra*.

Notwithstanding, with respect to the actual institution of the criminal warrant for the arrest of plaintiff, this event was, of course, by the hand of the Richmond police, without the benefit of any further investigation of the crimes of forgery and uttering within its jurisdiction. In the absence of a defendant's personally swearing a warrant leading to a plaintiff's arrest in malicious prosecution claims, the question is whether the defendant otherwise actively cooperated in the process. In keeping with the circumstances, the jury was so instructed. As noted, the court has not approved a finding of liability for malicious prosecution as against a police officer who refers information to another police agency, which then caused plaintiff to be arrested. See *Peterbridge v. Bell, supra.*

Recently, in *O'Connor v. Tice, supra,* the court found a series of actions on the part of the defendants, short of swearing out a warrant for plaintiff's arrest, that were sufficient to support a jury's finding of active cooperation to satisfy the element of causing a criminal case to be set afoot. In *O'Connor,* the court delineated those actions by the defendants that evinced their intent to cause the initiation of criminal proceedings. Here, the actions of Edwards, a police officer, charged under law with investigating crime, involve no active, voluntary steps to have plaintiff placed under arrest. Confined as he was to investigating the crime of larceny in his jurisdiction, Chesterfield County, he left to another police agency in Richmond any further investigation of the crimes of forgery and uttering. Under this evidence, there is no evidence that Edwards either instructed, counseled, or caused Richmond to proceed to have plaintiff arrested. See *King v. Martin,* 150 Va. 122, 142 S.E. 358 (1928). There was no call or direction to arrest. Rather, Richmond, without any further investigation, caused plaintiff's arrest based solely on Edward's report, which alone is without support that plaintiff was guilty of using Haynes' stolen check in her purchase at Target. Edwards merely reported evidence of a crime to the proper authority without any steps taken to influence another enforcement officer who was situated to make his own judgment.

For the foregoing reasons, the court finds that the plaintiff did not show malice or that the defendant actively cooperated in the institution of the underlying criminal proceeding against plaintiff to support her claim for malicious prosecution as a matter of law.

The motion to set aside the jury's verdict and award final judgment to defendant is granted.