COURT OF APPEALS OF VIRGINIA

Present:   Judges O'Brien, Causey and Frucci
Argued at Virginia Beach, Virginia

ROBERT FRANCIS JONES

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1967-24-1                      JUDGE MARY GRACE O'BRIEN
                                                         JANUARY 6, 2026
STEVE R. DREW, CHIEF, ET AL.


FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
James C. Hawks, Judge Designate

Brenda L. Page (Alan F. Duckworth; Douglass A. A. James;
Verbena M. Askew; Page Law Firm, P.C.; The Verbena Askew Law
Firm, P.C., on briefs), for appellant.

Ahmed E. Mohamed Khalil; Darlene P. Bradberry, Chief Deputy
City Attorney (Mark A. Short; Christopher R. Hedrick; James A.
Cales III; Kaufman & Canoles, P.C.; Mason, Mason, Walker &
Hedrick, P.C.; Furniss, Davis, Rashkind and Saunders, P.C., on
briefs), for appellees.


Former Newport News police officer, Robert Francis Jones (appellant), appeals the

dismissal of his malicious prosecution suit against four members of his department: Chief of

Police Steve Drew, Detective Kathryn Riley, Lieutenant Shawnalea Ross, and Lieutenant

Charles Howser (collectively, the appellees). Appellant alleged that the appellees caused him to

be charged with multiple sex crimes without probable cause. The court sustained Lieutenant

Howser's demurrer and granted the other appellees' pleas in bar, holding that the pleadings—

amplified by the record from the underlying criminal proceedings—established probable cause

as a matter of law.

---

[*] This opinion is not designated for publication. See Code § 17.1-413(A).

Appellant asserts eight assignments of error.  The gravamen of his appeal is that the court

erred in dismissing his case without a jury trial to determine whether there was probable cause to

initiate the criminal prosecution.  Proffering over 900 pages of witness interviews from the

investigation preceding his arrest, appellant argues the appellees knew that the complaining

witness lacked credibility but pursued warrants nonetheless and withheld exculpatory

information from the probable cause affidavit submitted to the magistrate.  He argues the court

erroneously ruled that "a lack of probable cause" to issue the warrants was later "cured" when a

"judge found probable cause at the preliminary hearing."

Appellant also argues the court erred in requiring a heightened standard for asserting

malicious prosecution claims against members of law enforcement, versus private citizens who

initiate arrest.  Next, he contends that the court did not apply the "proper test" for determining

probable cause, relying incorrectly on an officer's subjective belief about the complaining

witness rather than considering whether that belief was objectively reasonable.  Finally, appellant

argues the court erred in ruling that he failed to allege malicious intent.  For the following

reasons, we affirm.

BACKGROUND[1]

*I. Criminal Prosecution and Acquittal*

In June 2018, Leanna Campbell reported that appellant sexually abused her when she was

a minor, approximately ten years earlier.  Campbell reported that the abuse occurred at the home

---

[1] Because the court dismissed appellant's complaint on demurrer as to one appellee, and on a plea in bar without taking evidence as to the other appellees, "we, like the trial court, rely solely on the pleadings in resolving the issue[s] before us." *Massenburg v. City of Petersburg*, 298 Va. 212, 217 (2019) (quoting *Weichert Co. of Va., Inc. v. First Com. Bank*, 246 Va. 108, 108 (1993)) (plea in bar); *Ward's Equip., Inc. v. New Holland N. Am., Inc.*, 254 Va. 379, 382 (1997) (demurrer).  "[W]e accept as true all factual allegations expressly pleaded in the complaint and interpret those allegations in the light most favorable to the plaintiff." *Sweely Holdings, LLC v. SunTrust Bank*, 296 Va. 367, 370-71 (2018) (quoting *Coward v. Wellmont Health Sys.*, 295 Va. 351, 358 (2018)).  However, we "ignore a party's factual allegations contradicted by the terms of

of her daycare provider, Kristi Cline, and claimed that Cline was complicit in the crime. At the time Campbell made her report, she had been treated for mental illness, including post-partum depression, and had been involuntarily committed four times.

Appellant was a Newport News police officer at the time of the alleged crimes and investigation. The complaint alleged that the investigation began "at the direction of Police Chief Drew." Detective Riley and Lieutenant Ross, along with other members of the department's special victims unit, interviewed several witnesses over nine months. They interviewed Campbell twice.

In March 2019, Detective Riley presented an affidavit of probable cause to a magistrate. Detective Riley certified that the facts came from "my personal observations, my training, my experience, and information obtained from witnesses and the victim." Detective Riley also wrote, "This affidavit is only intended to show that there is sufficient probable cause for the requested warrants and does not set forth each and every investigative fact known to me." Based on the affidavit, the magistrate issued nine felony warrants charging appellant with multiple instances of rape, forcible sodomy, and indecent liberties. Related charges were brought against Kristi Cline.

In April 2019, the Newport News Commonwealth's attorney moved for the appointment of a special prosecutor because appellant was a local police officer "who ha[d] worked closely with members of [the prosecutors'] staff" and the prosecution "would present a conflict of interest[] and raise an appearance of impropriety." The court granted the motion and appointed a special prosecutor.

---

authentic, unambiguous documents that properly are a part of the pleadings." *Ward's Equip., Inc.*, 254 Va. at 382.

A preliminary hearing occurred in October 2019. Campbell testified and was cross-examined by counsel for both appellant and Kristi Cline. At the end of the hearing, appellant asked the court to "decide that [Campbell's] testimony [was] incredible as a matter of law" due to "all the inconsistencies, prior complaints, prior alleged falsehoods" and "find no probable cause on the charges." The court denied the request and found probable cause on all counts. The grand jury returned nine indictments on November 12, 2019.

As the special prosecutor prepared for trial, the police department conducted an internal affairs investigation of appellant, which resulted in the termination of his employment in May 2020. The termination letter, which appellant attached to his complaint, referred to a polygraph test showing that he had been "deceptive in [his] responses to the questions asked" and concluded that the allegations of unlawful conduct had been "[s]ubstantiated." A grievance panel heard appellant's appeal and upheld the termination decision in August 2020.

The criminal matter proceeded to a jury trial on June 27, 2022. At the outset, the special prosecutor moved to nolle pross one of the rape charges. At the conclusion of the Commonwealth's case-in-chief, appellant moved to strike the evidence based on Campbell's lack of credibility. The court denied the motion. After presenting evidence in his defense, appellant renewed his motion to strike, which the court again denied. The jury acquitted appellant of all remaining charges.[2]

*II. Complaint for Malicious Prosecution and Dismissal*

Appellant filed a malicious prosecution suit against the appellees. As to Chief Drew, Detective Riley, and Lieutenant Ross, appellant alleged that they instituted criminal proceedings without probable cause. As to Lieutenant Howser, the complaint further specified that he was an

---

[2] The jury found co-defendant Kristi Cline not guilty on two counts and was unable to reach a verdict on the remaining counts. Kristi Cline has appealed the court's dismissal of her own malicious prosecution action. *See Kristi L. Cline v. Kathryn Riley*, No. 1099-25-1.

internal affairs investigator for the police department and that "internal affairs investigations and criminal proceedings[,] by law and departmental policies, are to be separate."  Lieutenant Howser testified at appellant's grievance hearing and stated that Campbell had testified inconsistently during the preliminary hearing.  According to the complaint, Lieutenant Howser explained that he did not investigate the inconsistent statements, nor interview other people Campbell had accused of sexual assault, because "he did not want to 'mess up' the criminal investigation of [appellant]."

Lieutenant Howser demurred on grounds that the complaint demonstrated that he had no role in the criminal prosecution, insofar as the complaint acknowledged that (1) he was an internal affairs investigator; and (2) internal affairs and criminal prosecutions are separate.  The other appellees each filed a plea in bar, motion craving oyer, and demurrer.  In support of their pleas in bar, the appellees argued that multiple findings of probable cause precluded appellant's action for malicious prosecution.

At a hearing, the court granted the motions craving oyer for certain documents from the criminal proceeding that appellant had referenced in his complaint: (1) Detective Riley's probable cause affidavit; (2) nine felony arrest warrants; (3) the preliminary hearing transcript; (4) nine grand jury indictments; and (5) the trial transcript.  As to Lieutenant Howser's demurrer, the court sustained it with leave to amend and "clarify" allegations that Lieutenant Howser actually participated in the prosecution.

With regard to the pleas in bar, the court ordered supplemental briefing concerning two malicious prosecution cases: *Lewis v. Kei*, 281 Va. 715 (2011) (unsuccessful suit against law enforcement) and *O'Connor v. Tice*, 281 Va. 1 (2011) (successful suit against a private citizen).  Appellant also proffered over 900 pages of transcribed witness interviews from the criminal investigation of Campbell's report of sexual assault.

At a follow-up hearing, the court granted the pleas in bar. Articulating its reasoning from the bench, the court first distinguished *O'Connor v. Tice* and other malicious prosecution cases against private citizens, noting the "vast difference between a police officer getting a warrant and an individual citizen getting [a] warrant." Unlike a private citizen leveraging criminal law to pursue a personal dispute, a "police officer is there because it's his duty, and so police officers share . . . a cloak of protection to some extent because they are acting in accordance with their sworn duty."

The court noted that, unlike *O'Connor v. Tice*, appellant's case involved police officers who "ha[d] the duty to investigate and act." Moreover, as even the complaint acknowledged, Lieutenant Ross told Campbell that she "believed" her during an investigative interview. The court further noted that Detective Riley—"after a substantial degree of investigation"—ultimately "accepted what [Campbell] was telling her as true and took it to the magistrate." The court noted an absence of allegations that the investigating officers obtained the warrants "out of spite or anger or malicious intent." Instead, the only allegation was that Detective Riley "did not reveal to the magistrate evidence that might lead the magistrate to not issue a warrant because of [Campbell's] inconsistency."

But, regardless of this allegation, the court held that once the matter proceeded to a preliminary hearing, "where there was not just an affidavit" but "actual[] testimony" that was "subject to cross-examination" and "the case was certified," then "probable cause was found." "[B]ased upon that," the court granted the pleas in bar and sustained Lieutenant Howser's demurrer without leave to amend. The court also reiterated that it was denying leave to amend "because Howser is [in] internal affairs and had nothing to do with this."

The final order memorialized this ruling. The order sustained Lieutenant Howser's demurrer "for the reasons stated on the record" and "dismisse[d] [Howser] from the case." Next,

the order granted the pleas in bar for "reasons stated on the record[,] . . . including the fact that the presiding judge at the [p]reliminary [h]earing found probable cause existed as to all [c]riminal [c]harges" and thus there were "no factual issues to decide." The court determined that "amendment of the [c]omplaint would be futile" and dismissed the case with prejudice against all appellees.

## ANALYSIS

*I. The court did not err in considering documents from the underlying criminal proceedings.*

We first address appellant's contention that the court erred in granting the appellees' motion craving oyer for the preliminary hearing transcript, the indictments, and the trial transcript.[3] This assignment of error presents a threshold issue because, after granting the motion, the court was able to consider key documents from the criminal proceedings against appellant and find that probable cause existed as a matter of law.

Appellant argues the court erred in granting the motion because the documents "were not in existence at the time when [Detective Riley] submitted the affidavit to the magistrate in support of the warrants issued against [appellant]." Appellant insists that the appellees "cannot use" these documents to "justify" probable cause "*after the fact*." In other words, according to appellant, these documents are "totally irrelevant" to whether there was probable cause when the appellees "made the decision to bring felony charges."

A motion craving oyer is a "remedy afforded to a litigant who has been sued on a claim based upon a written document mentioned in a claimant's pleading but not made a part of the

---

[3] We do not address appellant's additional contention that the court erred in granting oyer for the order designating a special prosecutor. The court took judicial notice of that document rather than grant oyer for it. *See* Code § 8.01-389. We also note that appellant does not challenge the court's decision to grant oyer for Detective Riley's probable cause affidavit and the ensuing nine arrest warrants.

record." *Byrne v. City of Alexandria*, 298 Va. 694, 700 (2020). A court grants the motion "where the missing document is essential to the claim." *Id.* Whether the missing document is essential to the claim presents a question of law that we review do novo. *See id.* at 698.

The oyer doctrine was initially "available only to compel the production of deeds, writs, bonds, letters of probate and administration" and other "documents under seal," but the Supreme Court over time "expanded the remedy to include production of a much wider range of documents." *Id.* at 699 (citing cases approving oyer for a recognizance bond, an indictment, an Act of Assembly, an appellate record, pleas filed in a separate criminal case, and construction contracts).

Appellant's complaint alleged that the appellees lacked probable cause to institute the criminal prosecution. *See Lewis*, 281 Va. at 722 (requiring proof that malicious prosecution was "instituted . . . without probable cause"). To illustrate a lack of probable cause, appellant's complaint not only relied on the affidavit supporting his arrest warrant—alleging that it contained "untruths" and "omissions of material facts"—but also referenced the preliminary hearing and listed information that the appellees allegedly withheld from the court. The complaint also referenced the indictments from the grand jury, claiming they were issued without probable cause. Further, it referenced certain statements Campbell made about appellant and appellant's evidence disputing those statements—all of which came out at trial and were thus reflected in the trial transcript. By relying on the preliminary hearing, indictments, and trial testimony to demonstrate a lack of probable cause, appellant made these documents essential to his malicious prosecution claim and thus susceptible to a motion craving oyer. *See Byrne*, 298 Va. at 700.

Nevertheless, appellant insists the court erred because these documents were immaterial to whether the appellees had probable cause at the outset of the prosecution. We disagree. A

motion craving oyer aims to equip the court with a broad and objective view of documents referenced in a complaint, not merely a subjective view of what one side deems important. *See Culpeper Nat'l Bank v. Morris*, 168 Va. 379, 382-83 (1937) (affirming decision to grant motion craving oyer over whole record of previous judicial proceeding). A plaintiff cannot "restrict [the court's] vision to only such parts of the record as the litigant thinks tend to support his view. When a court is asked to make a ruling upon any . . . record, it is its duty to require the pleader to produce all material parts." *Id.* at 383. Here, the complaint disputed findings of probable cause at multiple stages of the criminal prosecution; appellant cannot restrict the court's vision to what occurred at the outset.

Even assuming the court erred in granting the motion, it was harmless error because the court could have considered the documents under Code § 8.01-389. This statute allows the court to take judicial notice of records in the court's file in other proceedings: "The records of any judicial proceeding and any other official records of any court of this Commonwealth shall be received as prima facie evidence provided that such records are certified by the clerk of the court where preserved to be a true record." Code § 8.01-389. *See also Titan Am., LLC v. Riverton Inv. Corp.*, 264 Va. 292, 305 (2002) ("[W]here the plaintiff refers to another proceeding or judgment, and specifically bases his right of action, in whole or in part, on something which appears in the record of the prior case, the court . . . will take judicial notice of the matters appearing in the former case." (first alteration in original)). The court in fact did take judicial notice of the order appointing the special prosecutor in addition to allowing it pursuant to the motion craving oyer. The other documents were part of the judicial record and susceptible to judicial notice. Appellant did not dispute the authenticity of these documents, only their relevance.

Therefore, the court did not err in granting the motion, and if it did, any error was harmless.

*II. The court properly denied a jury trial under Code § 8.01-336(D).*

To prevail in an action for malicious prosecution, a plaintiff must prove that the prosecution was "(1) malicious; (2) instituted by or with the cooperation of the defendant; (3) without probable cause; and (4) terminated in a manner not unfavorable to the plaintiff." *Lewis*, 281 Va. at 722. The court found that probable cause for all criminal charges had been established at the preliminary hearing, thus leaving "no factual issues to decide," and granted the appellees' pleas in bar.

Appellant contends that the court erred in denying him a jury trial on the appellees' pleas in bar pursuant to Code § 8.01-336(D), because the facts regarding probable cause were in dispute. This argument presents a question of statutory interpretation, which we review de novo. *Burkholder v. Palisades Park Owners Ass'n*, 76 Va. App. 577, 582 (2023).

Titled "Trial by jury of plea in equity," Code § 8.01-336(D) provides as follows: "In any action in which a plea has been filed to an equitable claim, and the allegations of such plea are denied by the plaintiff, either party may have the issue tried by jury." When applicable, this provision "mandates the use of a jury to decide the plea filed in an equity case." *Ingram v. Commonwealth*, 62 Va. App. 14, 29 n.9 (2013).

> A plea in equity is a discreet form of defensive pleading that does not directly address the merits of a complaint. Instead, the plea raises "a single state of facts or circumstances (usually not disclosed or disclosed only in part by the record) which, if proven, constitutes an absolute defense to the claim."

*Id.* at 29-30 (quoting *Nelms v. Nelms*, 236 Va. 281, 289 (1988)).

The court did not err in denying a jury trial under Code § 8.01-336(D) because the statute does not apply. First, malicious prosecution is not an equitable claim; it is a legal claim for monetary damages. *See Worsham v. Worsham*, 74 Va. App. 151, 174-75 (2022) (distinguishing between equitable claims for non-monetary remedies and legal claims for monetary damages).

Second, the appellees' pleas in bar directly addressed the merits of the complaint (i.e., the existence of probable cause) and relied on circumstances fully disclosed in the record, amplified by the motion craving oyer (i.e., findings of probable cause at multiple junctures in the criminal prosecution). Although the existence of probable cause may act as a bar to liability, it is not the "plea in equity" contemplated by Code § 8.01-336(D) that mandates a jury trial.

    *III. The court did not err in granting the pleas in bar.*

    Appellant contends the court erroneously ruled that "a lack of probable cause at the time the warrant was issued was 'cured' when the judge found probable cause at the preliminary hearing." According to appellant, because probable cause is determined at the time officers initiate a prosecution, any subsequent proceeding resulting in a probable-cause finding is irrelevant. Additionally, he argues that when the warrants were issued and he was arrested, "the harm ha[d] already occurred and there [was] '*no cure*' after the fact." For these reasons, appellant concludes that the court erred in granting the pleas in bar.

    We review this assignment of error de novo. *See Massenburg v. City of Petersburg*, 298 Va. 212, 216 (2019). "[W]here no evidence is taken in support of a plea in bar, the trial court, and the appellate court upon review, consider solely the pleadings in resolving the issue[s] presented. In doing so, the facts stated in the plaintiff's [complaint] are deemed true." *Id.* (third alteration in original) (quoting *Lostrangio v. Laingford*, 261 Va. 495, 497 (2001)). "This approach results in functionally de novo review of the trial court's judgment." *Id.*

    In a malicious prosecution case, probable cause is the "knowledge of such a state of facts and circumstances as excite the belief in a reasonable mind, acting on such facts and circumstances, that the plaintiff is guilty of the crime of which he is suspected." *Lewis*, 281 Va. at 723 (quoting *Commissary Concepts Mgmt. Corp. v. Mziguir*, 267 Va. 586, 590 (2004)). "Whether probable cause existed is determined as of the time when the action complained of was

taken." *Id.* "[W]here the facts relating to probable cause are not in dispute," the issue is a "question of law for the court." *Eubank v. Thomas*, 300 Va. 201, 209 (2021) (quoting *Lee v. Southland Corp.*, 219 Va. 23, 27 (1978)).

Contrary to appellant's assignment of error, the court never ruled that the arrest warrants lacked probable cause.[4] Instead, the court focused on the preliminary hearing and determined that the judge's finding of probable cause resolved any factual dispute. Therefore, here, regardless of whether the arrest warrants lacked probable cause, we consider if indeed the subsequent judicial determinations of probable cause precluded appellant's claim for malicious prosecution.

Although the Supreme Court of Virginia has not directly addressed the issue, persuasive federal authority holds that independent judicial determinations of probable cause preclude a plaintiff from establishing the third element of a malicious prosecution claim—i.e., that the prosecution was commenced without probable cause. *See, e.g.*, *Johnson v. Ortiz*, 721 F. Supp. 3d 418, 429 (E.D. Va. 2024). In *Johnson*, the plaintiff alleged that the defendant officer initiated criminal proceedings without probable cause and presented false testimony to a Virginia special grand jury, which indicted the plaintiff for murder. 721 F. Supp. 3d at 421. After a four-week trial, a jury deliberated less than one hour before returning a not-guilty verdict. *Id.* at 424. The court determined that the plaintiff failed to state a Virginia common-law claim for malicious prosecution because the special grand jury and the Commonwealth's attorney made independent decisions to indict and prosecute, "break[ing] the causal chain between [the] law enforcement officer's misconduct" and the plaintiff's injuries. *Id.* at 429.

---

[4] The court asked appellant whether "defective" arrest warrants could "be cured at a later date, for instance, [at] a preliminary hearing where all the evidence is subjected to cross-examination." But this was a hypothetical question testing appellant's malicious prosecution theory, not a factual finding about the arrest warrants issued in this case.

The court noted that an officer "may remain liable for malicious prosecution even when a prosecutor retains all discretion to seek an indictment[] only under certain narrow circumstances, such as when [the] [o]fficer 'lied to or misled the prosecutor,' 'failed to disclose exculpatory evidence to the prosecutor,' or 'unduly pressured the prosecutor to seek the indictment.'" *Id.* (quoting *Evans v. Chalmers*, 703 F.3d 636, 647-48 (4th Cir. 2012)). However, in *Johnson*, there were no allegations that the officer lied to or misled the prosecutor or pressured the prosecutor. *See id.* at 429-30. And, even assuming the officer presented false testimony to the grand jury, the grand jury heard testimony not only from that officer, but also from the plaintiff and six other witnesses. *Id.* at 430. Therefore, the plaintiff's malicious-prosecution claim failed because the independent decisions by the special grand jury and the Commonwealth's attorney effectively severed any connection between the officer's allegedly wrongful conduct and the injuries. *See id.* at 429-30. *See also Wilson v. Town of Mt. Jackson*, No. 5:21-cv-00055, 2022 U.S. Dist. LEXIS 47678, *30 (W.D. Va. March 17, 2022) ("[I]f another actor determines that genuine probable cause exists[,] . . . that determination acts as an *independent superseding cause* shielding the bad actor from liability." (emphasis added)).

So, too, here. The probable cause finding at the preliminary hearing was a superseding occurrence that shielded the appellees from liability for allegedly omitting material information from the affidavit. Although Detective Riley's affidavit was silent as to Campbell's mental health issues and history of false accusations, multiple independent decision makers gained access to that information and continued with the criminal prosecution. Notably, at the preliminary hearing, appellant's counsel extensively cross-examined Campbell about her prior inconsistent statements, false accusations, and mental health history. Thus, these issues were clearly known by the special prosecutor, defense counsel, and the court. At the conclusion of the preliminary hearing, appellant moved to dismiss the case for lack of probable cause based on

- 13 -

Campbell's lack of credibility. The court denied that request and found probable cause. In light of this ruling, and appellant's failure to allege facts that would override the intervening superseding cause doctrine—i.e., that the appellees lied to or misled the prosecutor, failed to disclose exculpatory evidence to the prosecutor, or applied undue pressure on the prosecutor— any potential liability for the appellees was severed by the court's independent decision-making at the preliminary hearing, as well as by the independent decisions of the special prosecutor to proceed, the grand jury to indict, and the trial court to deny the motions to strike.

Appellant insists that findings from the criminal proceeding are not dispositive of the issue of probable cause, relying on *Westreich v. McFarland*, 429 F.2d 947 (4th Cir. 1970). In *Westreich*, the Fourth Circuit held that a malicious-prosecution plaintiff's indictment for a crime was "pertinent evidence tending to show probable cause." 429 F.2d at 949. According to appellant, if an indictment is merely "pertinent evidence" of probable cause, then no findings from a criminal proceeding can ever amount to conclusive proof. We disagree. Where, as here, a record establishes multiple, independent determinations of probable cause, and a malicious-prosecution plaintiff fails to allege anything to rebut these determinations, a plea in bar is appropriate.[5]

"Malicious prosecution actions arising from criminal proceedings are not favored in Virginia[,] and the requirements for maintaining such actions are more stringent than those applied to other tort cases." *Eubank*, 300 Va. at 207 (quoting *O'Connor*, 281 Va. at 7). "Such actions are disfavored because criminal prosecutions are 'essential to the maintenance of an orderly society,' and persons bringing such prosecutions should not be deterred by the fear of

---

[5] Appellant also relies on select quotations from *Bennett v. R&L Carriers Shared Services., LLC*, 744 F. Supp. 2d 494, 520 (E.D. Va. 2010), but that case was appealed to the Fourth Circuit and affirmed on grounds that did not encompass those quotations. *See Bennett v. R&L Carriers Shared Servs., LLC*, 492 F. App'x 315 (4th Cir. 2012).

unjustified reprisals in the form of ensuing civil litigation." *Id.* at 207-08 (quoting *Reilly v. Shepherd*, 273 Va. 728, 733 (2007)). "The courts, in the public interest, should maintain unimpaired the doctrine that the existence of probable cause is a complete defense to an action for malicious prosecution." *Brodie v. Huck*, 187 Va. 485, 489 (1948). If probable cause exists at any stage of criminal proceedings, there is probable cause to support the charges, and an accused—like appellant—has not been subjected to a perversion of criminal process. Here, there is no dispute that probable cause was judicially determined three times at adversarial proceedings: the preliminary hearing, the motion to strike, and then renewed motion to strike. The pleadings, as amplified by the criminal record, demonstrate that the prosecution was justified, and appellant failed to allege any facts to rebut this conclusion. Therefore, the court did not err in granting the pleas in bar.

IV. *The court did not err in sustaining Lieutenant Howser's demurrer without leave to amend.*

The court sustained Lieutenant Howser's demurrer without granting appellant leave to amend "because Howser is [in] internal affairs and had nothing to do with this." Appellant argues that this ruling by the court was an impermissible "evidentiary finding" based on mere "allegations of defense counsel." Additionally, appellant argues that the court ignored allegations in the complaint regarding Lieutenant Howser's "involvement in cooperating with the other defendants in obtaining the warrants of arrest."

We review de novo the circuit court's judgment sustaining a demurrer. *Theologis v. Weiler*, 76 Va. App. 596, 603 (2023). "The purpose of a demurrer is to determine whether the pleading and any proper attachments state a cause of action upon which relief can be given." *Young-Allen v. Bank of Am.*, 298 Va. 462, 467 (2020) (quoting *Steward v. Holland Fam. Props., LLC*, 284 Va. 282, 286 (2012)).

- 15 -

"In deciding whether to sustain a demurrer, the sole question before the trial court," and before this Court on appeal, "is whether the facts pleaded, implied, and fairly and justly inferred are legally sufficient to state a cause of action against a defendant." *Pendleton v. Newsome*, 290 Va. 162, 171 (2015). "When reviewing such a judgment, we 'accept as true all factual allegations expressly pleaded in the complaint and interpret those allegations in the light most favorable to the plaintiff.'" *Taylor v. Aids-Hilfe Koln, e.V.*, 301 Va. 352, 357 (2022) (quoting *Coward v. Wellmont Health Sys.*, 295 Va. 351, 358 (2018)).

The court did not err in sustaining the demurrer. The complaint itself recognized the separation between internal affairs and criminal proceedings at the police department; failed to allege a specific role for Lieutenant Howser in the institution of criminal charges; and is devoid of any specific allegation of malice on the part of Lieutenant Howser toward appellant. Therefore, neither the allegations nor any reasonable inferences therefrom stated a claim for malicious prosecution against him. *See Sweely Holdings, LLC v. SunTrust Bank*, 296 Va. 367, 371 (2018) ("'[I]nferences [that] are strained, forced, or contrary to reason'" are "properly disregarded as 'arbitrary inferences.'" (quoting *Coward*, 295 Va. at 359)).

Further, the court did not err in denying leave to amend. Although "when a demurrer is sustained, leave to amend should be liberally granted to further the ends of justice," leave to amend need not be granted when the proposed amendment "would accomplish nothing more than provide [an] opportunity for reargument of the question already decided." *Hechler Chevrolet, Inc. v. Gen. Motors Corp.*, 230 Va. 396, 403 (1985). The futility of amending the complaint is clear from the court's ruling that there was probable cause as a matter of law. The court provided this basis for denying leave to amend, in addition to its rationale that Lieutenant Howser was isolated in internal affairs and had nothing to do with the prosecution. Therefore,

even assuming appellant could amplify the allegations as to Lieutenant Howser's involvement in the prosecution, the complaint would still fail due to the existence of probable cause.

> V. *The court did not apply incorrect legal standards in assessing appellant's malicious prosecution claim.*

Appellant argues that the court erred by requiring a heightened standard for asserting malicious prosecution claims against members of law enforcement, stating that police officers "share a cloak of protection" because "they are acting in accordance with their sworn duty." Appellant also claims the court erroneously relied on Lieutenant Ross's subjective belief that Campbell was truthful during the investigative interviews—and failed to consider whether that belief was objectively reasonable.

Appellant has assigned error to peripheral comments the court made that do not pertain to the core decision we affirm here: the finding of probable cause at the preliminary hearing, reinforced at trial when the court twice denied appellant's motion to strike, precluded appellant's claim for malicious prosecution. Accordingly, these comments are not a basis for reversal. *See, e.g.*, *Coward*, 295 Va. at 363 n.11 (declining "to 'fix upon isolated statements of the trial judge taken out of the full context in which they were made, and use them as a predicate for holding the law has been misapplied'" (quoting *Yarborough v. Commonwealth*, 217 Va. 971, 978 (1977))); *see also Suffolk City Sch. Bd. v. Wahlstrom*, 302 Va. 188, 217 (2023).

Finally, appellant argues the court erred in ruling that he failed to allege malicious intent by Detective Riley or Lieutenant Ross, as he did allege that they withheld investigative information from the magistrate "for nefarious and malicious purposes." Again, appellant fails to point to any reversible error here. Even assuming Detective Riley or Lieutenant Ross maliciously withheld investigative information from the magistrate, the pleadings—as amplified by the criminal record—fail to show that this information was ever withheld from appellant, defense counsel, the special prosecutor, or the court. Instead, the transcripts from the

- 17 -

preliminary hearing and trial reflect thorough cross-examination of Campbell relating to her inconsistent statements, prior false accusations, and mental health history. Yet, the court repeatedly found probable cause, cutting off any causal connection between the officers' alleged misconduct and appellant's alleged injury. *See Johnson*, 721 F. Supp. 3d at 429 (holding that "subsequent acts of independent decisionmakers, including prosecutors, grand juries, and judges, may constitute intervening superseding causes that break the causal chain between a law enforcement officer's misconduct and a plaintiff's [injury]").

CONCLUSION

For these reasons, we affirm the court's decisions granting the pleas in bar and sustaining the demurrer without leave to amend.

*Affirmed.*